415 So.2d 670 (1982)
SUCCESSION OF Dr. William E. GRIFFITH.
In re Edward C. ALKER
v.
SUCCESSION OF Dr. William E. GRIFFITH.
No. 12434.
Court of Appeal of Louisiana, Fourth Circuit.
May 27, 1982.
*671 M. Arnaud Pilie, Pilie & Pilie, New Orleans, for executrix and appellantKaren Griffith.
Edward C. Alker, Metairie, in pro. per.
*672 Before BOUTALL, CHEHARDY and KLIEBERT, JJ.
KLIEBERT, Judge.
The decedent, William E. Griffith, died on October 21, 1979. His widow, Karen Griffith, filed for probate his last will and testament in statutory form dated July 20, 1977. She was confirmed as the testamentary executrix of the succession on November 28, 1979. Mr. Edward C. Alker, an attorney, alleging himself to be an unliquidated creditor of the succession for unpaid legal services in the amount of $24,167.10, filed, on June 16, 1980, a rule nisi labeled "Petition by Creditor to Compel Executrix to Furnish Security". This pleading alleges there is a "proof of claim" attached. On the second page of this pleading there is an order dated June 18, 1980 ordering the testamentary executrix to post security of $30,208.88 for Alker's claim.[1] Thereafter (following the filing of unrelated matters) there appears in the record a document labeled "Formal Proof of Claim to the Succession" with an attached "Statement of Account" showing how the claim of $24,167.10 was computed. The documents are stamped as having been filed on June 23, 1980. The document contains language stating that it is a formal proof of claim mailed to the succession representative on June 9, 1980 pursuant to the provisions of C.C.P. 3245. The trial judge, in a handwritten order dated June 23, 1980, appearing on the bottom of the statement of account, set a hearing for June 30, 1980. There is no indication in the record by minute entry or otherwise as to whether a hearing was held on June 30, 1980 or whether the matter was continued.
On July 9, 1980, Alker filed a rule against the testamentary executrix to show cause why she should not be removed as the succession representative and his claim ordered paid immediately. By court order attached thereto, dated July 21, 1980, the rule was set for hearing on September 3, 1980. The pleading contains a certificate of service dated July ___, 1980 (sic) stating that all counsel of record had been served and there is a service instruction on two addresses at which Mrs. Karen Griffith, the testamentary executrix, could be served. A return by Deputy Hedwig on this rule shows that as of July 30, 1980 he was unable to serve the rule on the testamentary executrix. On the date set for the hearing, that is, September 3, 1980, only Edward C. Alker appeared. A transcript of the evidence submitted by Alker is filed in the record. Alker testified as to an error in addition of $1,000.00 in the statement of account filed on June 23, 1980 and that he performed the services indicated in the statement and submitted the proof of claim and the statement of account in evidence to support his claim of $25,167.10 in attorney fees. On the same day, i.e., September 11, 1980, the trial judge rendered judgment ordering the testamentary executrix to pay the sum of $25,167.10 together with $500.00 additional as attorney fees to Alker.
Counsel for the executrix, on September 16, 1980, filed a rule to show cause why the judgment dated September 11, 1980 should not be set aside due to the unauthorized use of a summary proceeding and lack of service. At the time of filing, the rule was set for hearing on September 26, 1980.[2] On October 9, 1980 the testamentary executrix applied for and was granted a suspensive appeal of the judgment dated September 11, 1980. The return date set for the appeal was December 9, 1980. The suspensive appeal bond was timely filed on the same date.
*673 Notwithstanding the pendency of a suspensive appeal of the September 11, 1980 judgment, Alker started seizure proceedings to enforce collection of the judgment. The testamentary executrix applied to this court for writs of certiorari and prohibition to ascertain the validity of the judgment of September 11, 1980. These were denied on February 2, 1981.[3] Thereafter, on application of the testamentary executrix the Supreme Court stayed all proceedings and remanded the case to this court for an expedited hearing.[4] Prior to the granting of the writ by the Supreme Court, Alker's efforts to execute on the judgment of September 11, 1980 resulted in the testamentary executrix reapplying for a stay order and writs to this court.[5] On the initial hearing this court set the judgment of September 11, 1980 aside for lack of service and remanded the case to the trial court. On a subsequent hearing, based on additional information submitted to the court, however, the judgment was affirmed and a mandamus issued directing the trial judge to revoke and vacate the writ of fieri facias and to dismiss the garnishment proceedings because of the pendency of this suspensive appeal. La. App., 411 So.2d 55.
The legal issues on this appeal are simple. However, we are plagued with the problem of obtaining a complete record from the trial court. In addition to the record being fractured and segregated for the writ application, the problem is compounded by the fact this is a succession proceeding where different claims in litigation against the succession merely bear the number and identification of the succession without any identification as to the particular claim involved. Further, counsel for each party presents arguments based on a vague record or pleading alleged to have been filed but not contained in the record and neither side seeks to clarify the record.
On the writ applications to this court the issues presented were (1) Alker's use of the summary process, (2) the service of Alker's pleadings, and (3) whether the suspensive appeal (the one now being considered) was timely filed. The briefs filed in the appeal cover substantially the same arguments as those made in the application for writs.
As to the improper use of a summary proceeding, Judge Gulotta, in the initial opinion rendered on the writ application, said:
"Although there is a serious question whether summary procedure may be used to assert a money claim against a succession, the dilatory exception to use of this procedure is waived unless timely pleaded in the trial court. LSA-C.C.P. Arts. 926, 928. See also, Ritchey v. Brignac, 328 So.2d 190 (La.App. 3rd Cir. 1976); In re Lomm, 195 So.2d 416 (La.App. 4th Cir. 1967), writ refused, 250 La. 541, 197 So.2d 81 (1967). In this matter the exception was untimely filed and we cannot now consider the propriety of Alker's use of summary procedure to assert his claim."
However, as recognized and stated by Judge Gulotta, a judgment rendered against a defendant who has not been served with process and has not entered a general appearance is an absolute nullity that can be raised collaterally at any time. LSA C.C.P. Art. 2002(2). Thompson v. Courville, 372 So.2d 579 (La.App. 3rd Cir. 1979).
Therefore, in the initial opinion on the writ application this court considered the real issue before it was "whether the Succession was properly served with Alker's rule to show cause". In reaching the conclusion to set aside the judgment of September 11, 1980, Judge Gulotta held that "since a rule to show cause anticipates an appearance by the defendant in rule, we hold that Alker's rule required service by the Sheriff". He then concluded that Alker's rule to show cause and the order setting the matter aside for hearing on September *674 3, were not served on either the Succession's attorney or the executrix and accordingly set the judgment of September 11, 1980 aside.
Subsequently, on a rehearing of the writ application, Judge Boutall, as the organ of the court said:
"Our inquiry here is basically directed at the nullity of judgment for lack of service. The record shows, despite continued denials of the succession attorney, that the `FORMAL PROOF OF CLAIM TO THE SUCCESSION' and `STATEMENT OF ACCOUNT', showing the details of the claim for attorney's fees and containing an order of the judge setting the hearing on the claim for June 30, 1980, were all personally served on June 27, 1980, on Karen Griffith, the executrix. John T. Keyes, Jr., attorney for the succession at that time was served on June 26, with citation and `PETITION BY CREDITOR TO COMPEL EXECUTRIX TO FURNISH SECURITY' in addition to the other three pleadings. The applicant's statements in this regard are misdirected. However, the rule was not heard on June 30 but later on September 3, and this is an area of serious contention".
He then went on to conclude the trial judge had in open court extended the trial date for the above referred to rule from June 30, 1980 to September 3, 1980. Therefore, he agreed with the decision of the trial judge to permit Alker to proceed with the rule on September 3, 1980 even though the attorney for the succession representative was not present. Although Judge Boutall's opinion upheld the validity of the judgment of September 11, 1980 on the arguments presented on the writ application, the court issued a writ of mandamus directing the trial judge to revoke and vacate the writ of fieri facias and to dismiss the garnishment proceedings because the perfection of the appeal now under consideration suspended execution of the judgment of September 11, 1980.
At first it might appear Judge Boutall's opinion on the writ application upholding the validity of the September 11, 1980 judgment is final, thus precluding us from again considering the validity of the judgment. However, although dependent upon the conclusions reached on a factual issue, i.e., was service of process made on the testamentary executrix, the substantive question involved is whether or not the judgment of September 11, 1980 is a nullity.
Under Article I, Section 2 of the Louisiana Constitution of 1974, no person can be deprived of life, liberty or property, except by due process of law. The essential elements of due process of law are notice, and the opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case. Louisiana Materials Co. v. Cronvich, 236 So.2d 510 (La.App. 4th Cir. 1970). Additionally, to render a valid judgment a court must have jurisdiction over the person. This jurisdiction must be based on service of process. La.C.C.P. 6. Thus, in the absence of process on the testamentary executrix of a pleading demanding payment of the unliquidated claim, the judgment of September 11, 1980 is an absolute nullity and, as such subject to a collateral attack at any time. C.C.P.Art. 2002(2), Thompson v. Courville, supra.
As was true at the time the application for rehearing on the writs was filed, we are now supplied with information we did not have at the time the writs were filed.[6] Ordinarily, we would not consider on this appeal the transcript of the arguments on the motion to set aside the judgment of September 11, 1980 which occurred on January 5, 1981 because they occurred after the suspensive appeal was granted. However, in view of the Supreme Court's order mandating an expedited hearing and the fact the question has been considered on writs on two previous occasions, in the interest of judicial expediency and justice, we do consider the transcript of the January 5, 1981 hearing on this appeal.
*675 From the transcript of the hearing of January 5, 1981, we note that counsel for both parties repeatedly refer to "rules" or "motions" allegedly filed or served but not sufficiently identified so that the particular rule or motion the attorney is referring to may be readily identified in the record or on returns made on the services. However, by careful examination of the transcript of January 5, 1981 and the rules and motions and services contained in the record, followed by questioning of the attorneys at the time of oral argument, we learned that the rule which Mr. Alker now contends supports the judgment of September 11, 1980 is not the rule labeled "Formal Proof of Account" or "Statement of Account" considered by Judge Boutall in the rehearing on the writ application; nor the rule to show cause filed by Alker on July 9, 1981 (above referred to), but rather a totally different rule which he quotes from in oral argument and refers to in his brief on appeal, and contended in the transcript of the January 5, 1981 hearing had been served on the succession representative. Upon questioning, Alker admitted that the rule he was relying on could not be found in the record before us. Although Alker contends the rule was filed and served he made no effort to prove his contention by other means.[7] An unfiled rule cannot serve as a basis for the judgment of September 11, 1980. Thus, the only remaining pleading which could have served as a basis for the judgment of September 11, 1980 is the rule filed by Alker on July 9, 1980 or the three documents considered by Judge Boutall.
In the transcript of the proceedings on January 5, 1981, Alker admitted that the rule dated July 9, 1980 (rule to remove the administratrix and for her to show cause why Alker should not be paid) had not been served on the succession representative. Also there is other evidence (the return by the Sheriff) indicating the rule was not served on the succession representative.
As determined by Judge Boutall on the writ application, it is clear the "Formal Proof of Claim to the Succession" and the "Statement of Account" together with the "Petition by the Creditor to Compel Executrix to Furnish Security" containing the handwritten order to set same for hearing on June 30, 1981 were personally served on the succession representative. However, those documents cannot support the judgment of September 11, 1980 ordering the succession representative to pay Alker's claim.
In order to provide for an orderly administration, the Code of Civil Procedure prescribes the procedures to be followed by an unliquidated creditor seeking to judicially enforce his claim. Under these procedures, the creditor cannot sue to reduce his claim to judgment until the succession representative has rejected the claim. However, he has the right to present the claim to the succession representative for acceptance or rejection (La.C.C.P. 3241), to demand the posting of security for his claim (La.C.C.P. 3155) and to interrupt prescription by filing a formal claim with the succession representative. (La.C.C.P. 3245). All of these can be accomplished in a summary manner.
By filing the documents entitled "Petition by Creditor to Compel Executrix to Furnish Security", the "Proof of Claim" and the "Statement of Account", Alker was following the procedures prescribed by the Code of Civil Procedure. From their contents and by specific allegations contained in the documents, it is certain their purpose was to have the succession representative acknowledge or reject the claim, to have security posted for the claim and to stop the running of prescription on the claim. None of these documents prayed for or demanded what the judgment of September 11, 1980 granted, i.e., a right to payment of the claim.
*676 Indeed, Alker's right to seek such a remedy could only be exercised by opposition to the succession representative's account or by an ordinary action following a rejection of the claim presented by the documents, La.C.C.P. 3246, Succession of Isgitt, 297 So.2d 231 (La.App. 3rd Cir. 1974). Apparently, in recognition of this requirement, on July 9, 1980 Alker filed the rule to show cause (as opposed to the required petition and citation of an ordinary action) why the succession representative should not be removed from office for failure to timely post the security ordered posted for his claim and why his claim should not be ordered paid.[8] This rule, however, was never served on the succession representative. As stated by Judge Gulotta, since the rule to show cause anticipated an appearance by the defendant in rule, it required a personal service on the succession representative. In the absence of such a service the constitutional and jurisdictional requirements necessary to sustain the judgment of September 11, 1980 are lacking. Hence, the judgment of September 11, 1980 is an absolute nullity.
Accordingly, the judgment of September 11, 1980 is set aside. The service of the "Proof of Claim" and the "Statement of Account" has however interrupted the running of prescription. Further, the testamentary executrix's failure to respond to these within the allotted thirty days constitutes a rejection of the claim, La.C.C.P. 3242, therefore Alker is free to pursue the reduction of his claim to judgment in accordance with the procedures prescribed by the Code of Civil Procedure, that is, by petition and citation or by opposition to the final account. Each party to bear his own cost of the appeal.
SET ASIDE AND REMANDED.
BOUTALL and CHEHARDY, JJ., concur.
BOUTALL, Judge, concurring.
I concur. Despite my belief that the prior opinion of this court rendered on February 10, 1982, is final and executory and is now the law of the case between these parties, I must recognize my own confusion as to the true facts. Accordingly a trial of this matter will render justice to all parties.
CHEHARDY, Judge, concurring.
Noting that the Succession representative has posted bond to insure payment of the claim against the Succession, I believe that justice will be best served by a trial of this matter.
Accordingly, I concur.
NOTES
[1] The executrix posted bond for $30,000.00 on July 24, 1980.
[2] There is some indication in the record that the hearing on the rule was continued to sometime in October. The record does not contain a transcript of an October hearing, but the record does contain a judgment dated October 21, 1980 dismissing the rule to set aside the September 11, 1980 judgment in favor of Alker. There was a hearing held on January 5, 1978 (after this appeal was taken) in which the rule to set aside the judgment of September 11, 1980 was reargued and a judgment rendered also dismissing the rule to set aside the judgment. A transcript of this hearing was attached to Alker's brief.
[3] The writ application was docketed in this court under No. 12280.
[4] This was docketed by the Supreme Court under No. 81-C-0340 396 So.2d 928 (1981).
[5] This amended or supplemental application was docketed in this court under No. 12382.
[6] The difficulty we have had and are now having with a record in this case is a classic example of the difficulty encountered when for the sake of expediency issues are considered on writ application rather than considered through the normal appellate process.
[7] The sheriff's office in Jefferson maintains a log on documents served and a microfilm record of documents served. In argument counsel for the succession representative contends that an examination of those records failed to locate the rule relied on by Alker. This is not disputed or commented on by Alker.
[8] Prior to the enactment of the Code of Civil Procedure, under the provisions of Article 1677 of the Civil Code, the failure to timely post the security as ordered by the court ipso facto resulted in removal of the succession representative.