443 So.2d 716 (1983)
Dale THIBODAUX
v.
ACME TRUCK LINES, INC., Frederick Harding, and the Continental Insurance Companies.
No. 83-CA-456.
Court of Appeal of Louisiana, Fifth Circuit.
December 8, 1983.
Writ Denied February 10, 1984.
*717 Thomas L. Giraud, New Orleans, for plaintiff-appellee.
Carlos E. Lazarus, Jr., Houma, for defendant-appellant.
Before BOUTALL, BOWES and GRISBAUM, JJ.
GRISBAUM, Judge.
This is a personal injury case resulting from an automobile accident. The issue is whether the trial court erred in its damage award of $958,638.33. Defendants, Acme Truck Lines, Inc. and Continental Insurance Company, appeal the awards for loss of past earnings, future medical, and future earnings. They claim these are contrary to the evidence and not supported in the record. They also contend the award of general damages, which includes past medical, past pain and suffering, and future pain and suffering, is excessive and not supported by the evidence. We amend and, as amended, we affirm.
The specific issues are:
(1) Whether the trial court abused its discretion in awarding $350,000 in general damages (past and future pain and suffering).
(2) Whether the trial court abused its discretion in awarding $30,000 for loss of past earnings.
(3) Whether the trial court abused its discretion in awarding $565,000 for loss of future earning capacity.
(4) Whether the trial court abused its discretion in awarding $5000 for future medical expenses.
Plaintiff, Dale Thibodaux, initially brought suit against Frederick Harding [the driver of an Acme Truck Lines' vehicle], Acme Truck Lines, Inc., and Continental Insurance Company [Acme's insurer] for damages as a result of a rear end collision in which Thibodaux was a guest passenger in his own vehicle. The record indicates no service on Harding. The suit against Harding was severed prior to trial. Although the defendants did not stipulate to liability, it was not contested. The degree and extent of Thibodaux's injuries and the damages for these injuries were the sole issues before the trial court. On January 10, 1983 the district court rendered a judgment in favor of plaintiff as follows:

 Future medical expenses $ 5,000.00
 Loss of earnings from the
 time of the accident to the
 time of trial $ 30,000.00
 Future loss of earning
 capacity $565,000.00
 Accrued medical expenses $ 8,638.33
 Past pain and suffering $ 50,000.00
 Future pain and suffering $300,000.00

After the accident, Thibodaux initially saw Dr. Joseph Powell, a general surgeon, who eventually referred him to Dr. Kenneth Adatto, an orthopedic surgeon. Over a six-month period, he saw Dr. Adatto on three different occasions. Initially, he was given muscle relaxers. In October 1981, he was improving but was still experiencing discomfort. However, in December 1981, some six months after the accident, Dr. Adatto had a CAT scan, EMG, and nerve conduction tests performed. Because the tests revealed spinal problems, Thibodaux elected to have surgery. The surgery revealed he had two ruptured discs.
*718 In addressing the initial issue as to whether the trial court abused its discretion in awarding $350,000 for general damages (future and past pain and suffering), we recognize the courts of appeal have a constitutional duty to review the law and facts and thereafter render a judgment on quantum based on the merits, determining whether a court has abused its "much discretion" that the law accords it in awarding damages. La. Const. art. 5, § 10(B); La. Civil Code art. 1934(3); Reck v. Stevens, 373 So.2d 498, 499-501 (La.1979); Wilson v. Magee, 367 So.2d 314, 315 (La.1979); Coco v. Winston Industries, 341 So.2d 332, 335 (La.1976). We further recognize before we can disturb an award made by the trier of fact, the record must clearly reveal that the trier abused its discretion in making an award. Coco, supra. Finally, as stated in Reck v. Stevens, 373 So.2d 498, 501 (La.1979), the initial inquiry must always be directed at whether the trier's award for the particular injuries and their effects upon this particular injured person is a clear abuse of the trier of fact's much discretion.
Recognizing these statutory and jurisprudential guidelines, we initially review the plaintiff's age, physical condition and work habits prior to the injury, and the effects of the accident upon this particular plaintiff. At the time of the accident, Thibodaux was 35 years old. He was in good health and had no previous back problems; he slept well, hunted, fished, played ball with his children, and was generally a very active person. Finally, for approximately 10 years prior to the accident, Thibodaux was a relatively successful farmer in his area.
Since his accident, he testified, along with his brother and his wife, that his life is radically different. He further states he is in constant pain and is relieved by taking three or four hot showers a day. He feels he cannot work without pain. He also states his activities have been reduced to zero. Specifically, he complains he cannot work, wash his car, help around the house, mow his lawn, hunt, or fish, nor can he concentrate due to the pain. Moreover, he and his wife both testified their marital relationship has been affected. The quality and frequency of their sexual experiences have been adversely affected. Thibodaux has also expressed fear in attempting all physical activities because these may aggravate his back condition.
The medical testimony reveals, from the time of the accident to the time of the trial, Thibodaux suffered in excess of a year the mental and physical pain relating to ruptured discs. Equally important, the medical testimony reveals that Thibodaux will never again be able to work as a farmer; consequently, this plaintiff's financial and social lifestyle will be dramatically changed for the remainder of his natural life. Therefore, this court is satisfied, from its analysis of these particular facts, the trial court did not abuse its much discretion in awarding $50,000 for past pain and suffering and $300,000 for future pain and suffering.
In addressing the issue of whether the trial court abused its discretion in awarding $30,000 for loss of earnings from the time of the accident to the time of the trial, we note the actuarial testimony of Mr. Philip J. Clesi who established a base average earnings as of the time of Thibodaux's injury on July 31, 1981 of $22,718. Using this base figure through December 13, 1982, the date of trial, Mr. Clesi computed plaintiff's loss of wages at $31,101. No alternative means for calculating past lost wages is presented by the evidence. Furthermore, plaintiff's expert made reasonable calculations despite the complexity of determining Thibodaux's wages as a farmer. We find the trial court's reliance on this expert's findings does not constitute an abuse of discretion.
We now turn to the question of whether the trial court abused its discretion in awarding $565,000 for loss of future earning capacity. The general rule in this area is a rule of reason and common sense which is applicable to contracts and torts alike. Folse v. Fakouri, 371 So.2d 1120, 1123 (La.1979). The Louisiana Supreme *719 Court in Folse v. Fakouri, citing the Coco case, stated:
What plaintiff earned before and after the injury does not constitute the measure. Even if he had been unemployed at the time of the injury he is entitled to an award for impairment or diminution of earning power. And while his earning capacity at the time of the injury is relevant, it is not necessarily determinative of his future ability to earn.
The Folse court further stated:
Damages should be estimated on the injured person's ability to earn money, rather than what he actually earned before the injury. Folse, supra.

Plaintiff's actuarial expert testified as to his methodology in calculating Thibodaux's loss of future income based on Thibodaux's occupation as a sugarcane farmer. Mr. Clesi took the gross earnings of Mr. Thibodaux for each year from 1976 through 1981 and adjusted them to the 1981 year based on the consumer price index. From this initial calculation he arrived at an average of $22,718 for estimating his future income. In addition, at the time of trial, he determined the life-work expectancy to be 25.718 years. Thereafter, he calculated the non-financial business section [non-financial meaning farming] growing at 1.4 percent, added to that 4.82 percent [the inflation factor], and arrived at a 6.22 percent real wage growth. Finally, he took a 1.65 percent real return on AAA corporate bonds and added it to the assumed inflation rate of 4.82 and arrived at an interest assumption of 6.47 percent [discount rate]. From these factors, he concluded a present value [at the date of trial] of $566,285 as the loss of future income for Mr. Thibodaux. On cross-examination, this expert calculated the present value of Thibodaux's future income at minimum wage [using the same methodology] to be $173,684.
Testifying as to Thibodaux's ability to work, Dr. Adatto explained Thibodaux would experience pain if he remained in one position for prolonged periods of time. He further advised that Thibodaux should not stoop or bend repetitively, lift heavy objects over 25 or 50 pounds, and sit or stand for long periods of time. He diagnosed Thibodaux as having a 20 percent to 25 percent spinal-type disability.
Dr. Adatto summarized the injury and condition as initially appearing as a classic "lumbar syndrome with persistent sciatica," which requires four to six months to diagnosis as "ruptured disc." He described Thibodaux's condition at the time of trial as he was experiencing the "average good result" after his back surgery. Dr. Adatto's testimony concludes that Thibodaux is capable of working as long as he protects his back for the rest of his working life.
In addition, defendant's vocational rehabilitation expert, Mr. Curtis Charrier, evaluated Thibodaux's vocational capabilities by reference to the medical reports and testimony of Dr. Adatto, along with the trial testimony of various witnesses and Thibodaux's own deposition. He felt Thibodaux was capable of sedentary work, light work, and moderate work activities. He further stated while this excludes farm work [which is classified as heavy work] he suggested Thibodaux was capable of doing sales-related jobs. He also listed the jobs available which Thibodaux is capable of performing. He finally noted that Thibodaux does need rehabilitation counseling but felt Thibodaux's depression could be overcome.
The only evidence contradicting Thibodaux's capability of working is plaintiff's testimony consisting of his own fears and apprehensions that he would be permanently disabled. Since plaintiff's own medical expert opined that Thibodaux is capable of working, we find plaintiff has fallen short of proving by a preponderance of the evidence that plaintiff would suffer a permanent and total loss in earning capacity. Holmes v. Texaco, Inc., 422 So.2d 1302, 1305 (La.App. 5th Cir.1982). Consequently, we reduce that portion of the plaintiff's award for future wage loss to reflect a credit for minimum wage employment.
We now address the final issue of whether the trial court abused its discretion in awarding $5000 for future medical expenses. Dr. Adatto testified that direct *720 medical expenses in the future would range from $700 to $800. Importantly, Dr. Adatto testified that a patient who has received a ruptured disc operation can expect to be a patient for at least 10 to 15 years. In Cushman v. Fireman's Fund Insurance Company, 401 So.2d 477, 481 (La.App. 2d Cir.1981), the court recognized a plaintiff has a right to recover for the cost of future medical treatment and these damages should not be denied because it is impossible to establish the nature and extent of the treatment that will be required and the exact cost of it. This court finds, from the totality of Dr. Adatto's testimony, the awarding of $5000 for future medical expenses does not demonstrate a clear abuse of discretion. Therefore, we see no abuse of discretion by the trial court.
For the reasons assigned, the judgment appealed from is amended to reflect the correction of the sum due for loss of future earning capacity of $566,285, subject to a reduction of $173,684; [$566,285$173,684 = $392,601] all other portions of the judgment are affirmed. All costs of this appeal are assessed one-half to appellant and one-half to appellee.
AFFIRMED IN PART AND AMENDED IN PART.