470 So.2d 378 (1985)
Charlotte CHAMPAGNE
v.
Gird LEE, St. Charles Parish Police Jury and United States Fidelity and Guaranty Company.
No. 84-CA-666.
Court of Appeal of Louisiana, Fifth Circuit.
May 13, 1985.
*379 Daniel E. Becnel, Jr., Robert M. Becnel, Becnel, Landry & Becnel, Reserve, for plaintiff-appellee.
Christopher H. Riviere, Porteous, Hainkel, Johnson & Sarpy, Thibodaux, for defendants-appellants.
Before CURRAULT, GAUDIN and GRISBAUM, JJ.
CURRAULT, Judge.
This is a suspensive appeal by defendants, Gird Lee, St. Charles Parish Police Jury, and United States Fidelity and Guaranty Company from a judgment awarding plaintiff, Charlotte Champagne, $1,000,000 in general damages and $7,000 lost wages (past due and future) for a back injury she received in an auto collision with a vehicle owned by the Parish and driven by Lee. The plaintiff answered the appeal requesting an increase in the award for lost wages.
Defendants-appellants have not appealed from the issue of liability, however, they assign three specifications of error: (1) the award of one million dollars in general damages was excessive, (2) the trial court abused its discretion by adopting plaintiff's post-trial memorandum as its own, and (3) the trial court erred in rendering judgment against excessive insurers who were not parties to the action.
On Friday, October 24, 1980, Ms. Champagne's auto was struck by a pick-up truck owned by the Parish of St. Charles and operated by its employee, Gird Lee. Ms. Champagne was taken from the scene by *380 an ambulance to St. Charles Hospital. No x-rays were taken nor medication given because plaintiff was six months pregnant at the time. On February 1, 1981, she consulted her family physician for back pain, but again, due to her pregnancy, no x-rays or drugs were prescribed. She later delivered a child in an uneventful term via caesarean. She again consulted her family physician, Dr. Roland Waguespack, on July 24, 1981, August 27, 1981 and December 1, 1982, who recommended pain medication and physical therapy. Dr. Waguespack then referred her to Dr. Walter Brent, an orthopedic surgeon.
She first saw Dr. Brent on September 9, 1981. He recommended a CT scan to diagnose her problem. The CT scan showed evidence of a disc bulging at the S-1, L-5 level. Dr. Brent then performed a laminectony of L-5 and the L-5, S-1 disc was removed to relieve nerve root pressure. Dr. Brent was of the opinion that the operation resulted in a 5% total body disability. He further concluded that she could return to work as a school teacher; however, she should not engage in physical activity such as playground monitoring.
Plaintiff next saw Dr. Kenneth Vogel. Dr. Vogel concluded, based on lumbar discogram, that plaintiff had a recurring herniated disc at the L-5, S-1 level, caused by lumbar instability at that level. A micro-surgical laminectomy of L-5, S-1 and the lumbar fusion of L-5 was then performed by Dr. Vogel and Dr. Wilmont Plogen.
Dr. Vogel concluded that this surgical procedure was painful and would leave the plaintiff 25% disabled with a 20% pain recovery. He further testified that the operation would cause a five inch scar on plaintiff's back and it would accelerate arthritis in the plaintiff's back.
While still under the care of Dr. Brent, plaintiff was examined by Dr. Christopher E. Cenac at the request of the defendants. His first examination was March 4, 1983, four days prior to Dr. Brent's operation. Dr. Cenac concluded that plaintiff had some objective symptoms of orthopaedic or neurological problems, however, he did not feel that a surgical laminectomy was needed. Dr. Cenac saw plaintiff again after her second surgery by Dr. Vogel. He concluded that Dr. Vogel's surgical intervention was unwarranted and that inadequate diagnostic testing was performed in that a discogram is totally useless as a diagnostic tool when there has been prior surgery in the joint.
While plaintiff was receiving treatment from physicians of her choice, she was also referred to Dr. V.J. Zeringue, an orthopedic surgeon for evaluation. He saw plaintiff on December 22, 1983 and again on June 14, 1984. He initially recommended surgery, thus supporting Dr. Vogel's opinion that second surgery was needed and felt she would be unable to return to work for a year because of the surgery performed by Dr. Vogel and notwithstanding the surgery and the fusion, she would have a 25% disability.
Plaintiff testified at trial that as a result of the accident she was unable to walk or stand for a prolonged period of time. She felt that as a result of the pain she was experiencing she could not return to work in the immediate future. She testified that she had difficulty raising a five year old and a two year old because of her immobility and that her recreational life was non-existent. Finally she said she could not sleep with or have sexual relations with her husband because she feared re-injury and pain as a result.
Although not controlling, damages are divisible into many elements, including loss of earnings, medical expensespast due and future, loss of past due earnings, loss of future earning capacity and general damages. Here the litigants stated they would list and itemize the medical expenses and then enter into a stipulation relative thereto. For some reasons best known to them, the promised list was never placed in the record.
In his petition, the plaintiff alleged damages to be:

1) Property damages, towing
 charges, automobile rental $4,500.00

*381
2) Past, present and future medical
 expenses $5,000.00
3) Past, present and future lost
 wages $7,000.00
4) Past, present and future pain
 and suffering, emotional distress,
 mental anguish, permanent
 disfigurement, permanent
 scarring, permanent disability,
 psychiatric and psychological
 injuries, possible fetal injuries
 to her unborn child $1,000,000.00

The trial judge awarded damages as prayed for except for the past, present and future medical expenses.
In fixing the amount of damages the trial judge relied on and adopted the plaintiff's counsel's post-trial brief as its own. The brief was merely a mechanical assessment of damages based on a comparison of damage awards for cases with similar medical findings. The methodology of awarding damages requires more than merely comparing plaintiff's medical condition with that of other cases with similar medical findings and awarding a similar amount of damages. Prior decisional awards relied on may be similar in that each of them involve a similar injury. Thereafter, however, the similarity ceases for each case is different and the amount of the award should be determined by the facts or circumstances peculiar to the case under consideration. Reck v. Stevens, 373 So.2d 498 (La.1979). In our view, therefore, the trial judge abused his wide discretion in merely relying on plaintiff's recitation of other selectively similar medical injuries without considering the effect of those injuries on the particular plaintiff.
Having made the determination that the trial judge abused his wide discretion, we find the award is excessive. The scope of appellate review is limited to lowering (raising) the award to the highest (lowest) point which, based on the particular facts of the case, is within the trial court's reasonable discretion. Reck v. Stevens, supra.
The plaintiff here is a young mother of two children who had a stable employment record as a school teacher. Prior to the accident she had no physical limitations. After the accident, her testimony and the medical evidence reveals that she has from 5% to 25% disability and was continuing to experience pain. She could no longer actively participate in the full raising of her children or engage in strenuous physical activities. Additionally, the injuries she sustained will limit her ability to work pain free. Moreover, her conjugal relationship with her husband has been adversely affected to the point that they can no longer sleep in the same bed.
The medical testimony reveals that from the date of the accident to the date of trial the plaintiff suffered pain relating to the injury. None of the medical evidence disputes an injury, only the extent of that injury and the extent to which it has disabled the plaintiff are disputed. Some physicians expressed the opinion additional surgery was needed and her inability to work would extend to the end of 1985 or 1986 because of this additional surgery.
Once the conclusion has been reached that the trial judge erred in fixing the amount of the award, prior awards may serve as an aid in determining what would be a proper award for the present case. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977). Here, analyzing the cases cited by the plaintiff, we find the awards for general damages for similar injuries to that sustained by the plaintiff range from the $167,000.00 award in Rollings v. Winn Dixie of Louisiana, Inc., 439 So.2d 1132 (4th Cir.1983), to the $350,000.00 award in Thibodaux v. Acme Truck Lines, Inc., 443 So.2d 716 (5th Cir.1983), and Johnson v. Dufrene, 433 So.2d 1109 (4th Cir.1983). General damages are defined in Anderson v. Welding Testing Laboratory, Inc., 304 So.2d 351 (La.1974) as:
"those which may not be fixed with any degree of pecuniary exactitude but which, instead, involve mental or physical pain or suffering, inconvenience, the loss of gratification of intellectual or physical enjoyment, or other losses of life or life-style which cannot really be measured definitively in terms of money."
*382 These awards seem to represent the upper and lower limits of general damage awards for injuries similar to those sustained by the plaintiff with a comparable residual disability. Therefore, we conclude that an award of $350,000.00 for general damages is appropriate in this case.
We next turn to appellee's contention that the award of $7,000.00 for past and future lost wages was inadequate. A letter dated June 4, 1984, which formed part of the school board records which the parties stipulated were authentic, indicated plaintiff was absent from work 21.5 days and lost $267.00 of wages in the period August 1980 thru June 1981, and was absent from work 100 days and lost $6,483.86 in wages during the time period August 1982 through June 1983 and was on sabbatical leave from August 1983 through June 1984 and lost $9,433.80 during this absence. Although this evidence shows the days she was not at work and the wages she lost because of her failure to be at work, it does not show or prove that the absences were due to the injury. For the period August 1980 through June 1983 the trial judge could have concluded from the general testimony of the physicians and from the hospital records that these absences were due to the injuries sustained in the accident. Hence, we cannot say he erred in awarding $7,000.00 in lost wages. However, in September of 1983, Dr. Brent found no objective sign of pain and believed plaintiff was capable of working. Likewise, Dr. Vogel in July of 1983 found only subjective indication of pain. Hence, we cannot say the trial judge's failure to include the wages lost during the time plaintiff was on sabbatical leave were error for there is sufficient evidence in the record to support the trial judge's conclusion. To recover for lost wages, plaintiff must not only show that she was not at work but, in addition, must show that the cause of her being away from work was due to the injuries sustained in the accident. Humphrey v. Gauthreaux, 458 So.2d 182 (5th Cir.1984). Further, although plaintiff argues for an award for loss of future earning capacity, no effort was made during the trial to show the extent of such a loss. There is no lay evidence and no expert economic testimony establishing a dollar amount of lost future wages if in fact plaintiff cannot return to work. The combination of these factors leads us to conclude that the plaintiff has fallen short of proving a total and permanent loss of earning capacity by a preponderance of the evidence. Awards of future damages are speculative by nature and cannot be easily calculated; hence, the trial court must be allowed wide discretion in fixing such awards. Holmes v. Texaco, Inc., 422 So.2d 1302 (5th Cir.1982). Therefore, the award of $7,000.00 by the trial court is adequate under the circumstances and is not an abuse of discretion.

EXCESS INSURERS
The district court judgment cast in judgment "Gird Lee, St. Charles Parish Police Jury and its successor, St. Charles Parish Council, a governmental entity, and United States Fidelity and Guaranty Company and all other excess carriers."
Appellant contends that the trial court erred in granting a judgment against the Parish's excess insurer when they were not parties to the suit. A valid judgment cannot be rendered unless the court has jurisdiction over the party cast in judgment based on service of process. Succession of Griffith, 415 So.2d 670 (4th Cir.1982). The record does not reflect that an excess insurer was ever named, served or entered an appearance in these proceedings, hence, the portion of the judgment rendered against them is invalid.
Accordingly, for the above stated reasons, the judgment appealed is hereby reversed as to the excess insurers, amended to reflect an award of $350,000.00 general damages and affirmed as amended. Costs of this appeal are to be shared equally by the parties.
REVERSED IN PART; AMENDED IN PART, AND AS AMENDED, AFFIRMED.
GAUDIN, J., concurs in part; dissents in part with written reasons.
*383 GAUDIN, Judge, concurring in part and dissenting in part.
I concur in the foregoing decision except with regard to the award of $350,000.00 as general damages, being of the opinion that this award is excessive.