875 F.2d 501
 1989 A.M.C. 2704, 28 Fed. R. Evid. Serv. 296
 Terrell A. WILLIAMS, Plaintiff-Appellee,
v.
CHEVRON U.S.A., INC., Defendant-Third Party Plaintiff-Appellant,
v.
LAND & MARINE APPLICATORS, INC., and Underwriters at Lloyd's
of London, Third-Party Defendants-Appellees.
 No. 87-3438.
 United States Court of Appeals,
Fifth Circuit.
 June 16, 1989.
 
 Lloyd C. Melancon, McLoughlin, Barranger, Provosty & Melancon, New Orleans, La., for defendant-third party plaintiff-appellant.
 Stephen B. Murray, Carol L. Michel, New Orleans, La., for Terrell Williams.
 Michael L. Mullin, Alan R. Sacks, New Orleans, La., for Land & Marine Applicators, & Underwriters.
 Appeal from the United States District Court for the Eastern District of Louisiana.
 Before THORNBERRY, GEE, and POLITZ, Circuit Judges.
 THORNBERRY, Circuit Judge:
 
 
 1
 Asserting claims of negligence and strict liability under Louisiana law, plaintiff-appellee Terrell Williams (Williams) brought suit against defendant-appellant Chevron to recover damages for injuries he allegedly sustained while working as a sandblaster/painter aboard Chevron's offshore platform. A jury found Chevron liable based on three alternative theories and awarded Williams $837,923.00. The district court entered judgment on the verdict and subsequently denied Chevron's post-trial motions for judgment notwithstanding the verdict, for new trial, and for remittitur. The district court also directed a verdict in favor of third-party defendant Land and Marine Applicators, Inc. (Land and Marine). Chevron appeals on all issues. We find ample evidence in the record to support the jury's determination of liability but find the award excessive. We therefore affirm the judgment with respect to Chevron's liability and, subject to Williams opting for a new trial limited to determining the amount recoverable for pain and suffering, modify the judgment to eliminate the excessive portion of the award. The judgment in favor of Land and Marine is affirmed.
 
 I. Background
 
 2
 Williams was a member of a seven man crew employed by Land and Marine. Land and Marine had contracted with Chevron to sandblast and paint Chevron's offshore platform, the 41-K. By separate contract, Chevron employed B & D Inspection Co. to oversee Land & Marine's performance. On July 10, 1985, Williams was lightly sandblasting or "sweeping" an area of the platform's cellar deck when he allegedly stepped on an unwelded section of floor grating supported on two sides by "I" beams and on one side by a rim around the circumference of a six-inch diameter vertical pipe. Williams claims that when he stepped on the grating it tipped at an angle creating a small hole into which he slipped. Williams immediately reported the unwitnessed incident to Bill McClish, an inspector with B & D Inspection Co., and Earl Dufrene, Land & Marine's foreman. Shortly after the accident, Sidney Darby, Chevron's company man on the 41-K, noticed an abrasion on Williams' leg and testified that Williams complained that his shoulder was hurting him.
 
 
 3
 July 10, 1985 was a crew change day on which Williams and his co-workers were transported to shore. Upon reaching shore, Williams visited West Jefferson Hospital where x-rays were taken. After advising Williams to apply heat to his shoulder and neck, the attending doctor sent him home. Williams then drove himself to his home in Winnsboro, La., a journey taking approximately five and one-half hours from New Orleans. Approximately seven months later in February 1986, Williams first visited Dr. Stuart Phillips, a board certified orthopedist. Williams told Dr. Phillips that he was suffering from pain in the upper portion of his back. Dr. Phillips testified that it was more proper to refer to the afflicted area as the lower neck.
 
 
 4
 Dr. Phillips ordered various tests including CAT scans and a Magnetic Resonance Image Scan the results of which confirmed that Williams was suffering from two bulging or herniated disks in the lower neck area. Dr. Phillips testified that the accident on July 10, 1985 "probably caused the patient's neck problems." Dr. Phillips recommended a surgical procedure known as Anterior Cervical Fusion or A.C.F. which would cost approximately $12,000. At the time of trial, Williams had not undergone this surgery. Dr. Phillips also testified that Williams' accident aggravated pain and numbness associated with varicose veins existing before the accident.
 
 
 5
 Williams brought suit against Chevron alleging three separate grounds for recovery under Louisiana law: (1) negligence, (2) strict liability for damage occasioned by the ruin of a building under LSA-C.C. art. 2322, and (3) strict liability for damage occasioned by "things which we have in our custody" under LSA-C.C. art. 2317. Chevron impleaded Land and Marine seeking fees, costs, and indemnification for damages paid to Williams should it be cast in judgment. Before submitting the case to the jury, the court directed a verdict in Land and Marine's favor. The jury then found Chevron 100% responsible for Williams' injuries under principles of negligence and strict liability. The jury awarded Williams $837,923. On appeal, Chevron contests the sufficiency of the evidence as it relates to (1) its liability, (2) the magnitude of damages, (3) several evidentiary rulings, and (4) the directed verdict in favor of Land and Marine. Chevron argues that its motions for j.n.o.v., new trial, or remittitur should have been granted.
 
 II. Evidentiary Rulings
 
 6
 Before proceeding to the merits of this appeal, we must address Chevron's challenge to several of the district court's evidentiary rulings. We note that "evidentiary rulings of the trial court will be left undisturbed unless an abuse of discretion results in substantial prejudice to the rights of a party." Petty v. Ideco, Division of Dresser Industries, Inc., 761 F.2d 1146, 1151 (5th Cir.1985).
 
 
 7
 Over Williams' objection, Chevron attempted to introduce Williams' $7500 settlement with Land and Marine ostensibly to impeach Williams' testimony that he did not have the financial means to pay for the recommended surgical procedure. The objection was sustained. Generally, settlement agreements are not admissible to question the amount of damages sought. Fed.R.Evid. 408. Although Chevron introduced the evidence for impeachment purposes, it is undoubtedly possible that the jury would have confused its purpose for that precluded by Rule 408. Whenever the possibility of jury confusion substantially outweighs the probative value of the evidence, it may be excluded. Fed.R.Evid. 403. We conclude that the exclusion was not an abuse of discretion.
 
 
 8
 The district court also sustained an objection to Chevron's attempt to introduce an arrest record from 1971 which denoted Williams' weight as substantially less than what he claimed he weighed at the time of the accident. Again, Chevron claims the evidence was intended for impeachment purposes, i.e. to challenge Williams' contention that he lost weight after the accident. The admissibility of specific instances of conduct is circumscribed by Rule 403. See Fed.R.Evid. 608(b) advisory committee note. We are confident that the unfair prejudice which the contents of the arrest record would have produced substantially outweighed its probative value.
 
 
 9
 Lastly Chevron appeals the exclusion of an illustration drawn by its expert witness while testifying which diagrammed the configuration of the allegedly defective grating. We need not decide whether such exclusion constituted an abuse of discretion. In light of the expert's testimony describing the configuration, the jury's opportunity to view the illustration during the expert's testimony, and photographs of the area, we hold that the exclusion of this cumulative evidence did not result in substantial prejudice to Chevron's rights.
 
 III. The Judgment Against Chevron
 A. Liability
 
 10
 Chevron contends that the evidence adduced at trial was insufficient to create a jury question with respect to its liability. Chevron's liability rested on three distinct grounds. Thus, if sufficient evidence exists to support any one of the theories, we must affirm. Whether claims are based on negligence or strict liability under articles 2322 or 2317, there will be no liability unless the alleged defect, in this case the unwelded section of floor grating, presents an "unreasonable risk of injury." Carter v. Board of Supervisors of Louisiana State University, 459 So.2d 1263, 1265-66 (La.App. 1st Cir.1984), writ denied, 462 So.2d 1248 (La.1985); Entrevia v. Hood, 427 So.2d 1146, 1148 (La.1983). Whether a risk is unreasonable is determined after "a study of the law and customs, a balancing of claims and interests, a weighing of the risk and the gravity of harm, and a consideration of individual and societal rights and obligations." Entrevia, 427 So.2d at 1149.
 
 
 11
 Chevron's sole argument is that there was no evidence to suggest that the unwelded section of grating could have possibly flipped and therefore, as a matter of law, could not have constituted an unreasonable risk on which to base its liability under any of the three theories. Chevron further argues that, because it was physically impossible for the accident to have occurred as alleged, the district court erred in denying its post-trial motions for j.n.o.v. or new trial.
 
 
 12
 We review the denial of a motion for judgment notwithstanding the verdict using the familiar standard enunciated in Boeing Co. v. Shipman, 411 F.2d 365 (5th Cir.1969) (en banc). That is, we will reverse the denial of such motion only if the record lacks evidence of such quality and weight that reasonable and fair-minded men would be unable to reach different conclusions. See id. at 374. After a careful review of the record, we find evidence of such weight and quality to create a jury question under the Boeing standard and therefore hold that the district court did not err in denying Chevron's motion for j.n.o.v.
 
 
 13
 Evidence supporting Williams' claim included: his own testimony; the undisputed fact that the unwelded, rectangular grating was not supported on one side; B & D's inspector Bill McClish's testimony that when he replaced the grating in its proper position it tipped a little; McClish's testimony that an unwelded piece of floor constituted an unsafe condition; and Chevron company man Sidney Darby's testimony that the grating was subsequently welded in place "to prevent it from having another accident." This evidence was called into question by Chevron's expert witness who testified that, even if the grating was welded in place, the three-sided support configuration rendered it impossible for the floor to have tipped under Williams' weight. It is not this court's function to weigh conflicting evidence. Rather, in the presence of contradictory evidence, a motion for judgment notwithstanding the jury's verdict should be denied.
 
 
 14
 Chevron also argues that the district court erred in denying its motion for new trial. We enunciated the standard of review for the denial of motions for new trial in Dotson v. Clark Equipment Co., 805 F.2d 1225, 1227 (5th Cir.1986):
 
 
 15
 A trial court should not grant a new trial on evidentiary grounds unless the verdict is against the great weight of the evidence. The decision to grant or deny a motion for new trial is, however, within the sound discretion of the trial court, and reversible only for an abuse of that discretion. Our review is particularly limited when the trial court has denied a motion for a new trial.
 
 
 16
 Shows v. Jamison Bedding, Inc., 671 F.2d 927, 930 (5th Cir.1982). Review of the district court's denial of the motion for new trial requires that we "review the facts in a light favorable to the jury verdict." Evans v. H.C. Watkins Memorial Hospital, Inc., 778 F.2d 1021, 1022 (5th Cir.1985).
 
 
 17
 Although Chevron's expert's testimony as to the impossibility of the risk occurring was perhaps more emphatic than the evidence supporting Williams' case, we do not find that it constituted the great weight of evidence. The motion for new trial was therefore properly denied. Since we have found that reasonable minds could differ on whether the unwelded grating constituted an unreasonable risk of injury and because Chevron does not argue that the grating was not in its custody, we affirm the judgment based on art. 2317. We find it unnecessary to comment further on Williams' alternative theories.
 
 
 18
 Chevron next argues that the accident was caused by Williams' own negligence. Chevron contends that Williams lifted the loose grating to sandblast underneath the cellar deck and inadvertently fell into the hole he had created. Williams testified that he did not lift the grating. Mr. Dufrene testified that, based on the existence of a rust residue on the welds, he did not believe the grating had been lifted. Lastly, Mr. Darby, Chevron's assistant production foreman, testified that it looked to him as if the sandblasting had occurred with the grating over the hole. Chevron's evidence contradicting these statements neither renders it impossible for a reasonable man to reach contrary conclusions regarding Williams' alleged negligence nor does it constitute the great weight of evidence on the subject. We therefore find that the district court did not err in denying the motions for j.n.o.v. or for new trial based on Williams' alleged contributory negligence.
 
 B. Damages
 
 19
 After trial, Chevron filed a motion for remittitur which the district court denied. The jury verdict awarded Williams the following damages:
 
 
 20
 Physical Pain and Suffering .... $200,000
Mental Anguish and Anxiety ..... $200,000
Past Medical Expenses ........... $ 2,923
Future Medical Expenses ........ $ 12,000
Past Lost Wages ................ $ 32,000
Future Lost Wages .............. $391,000
Total Damages .................. $837,923
 
 
 21
 Chevron appeals the magnitude of damages awarded for (1) future lost wages, (2) physical pain and suffering, and (3) mental anguish.
 
 
 22
 Our review of jury awards is limited. As this court has said in the past
 
 
 23
 The jury's award is not to be disturbed unless it is entirely disproportionate to the injury sustained. We have expressed the extent of distortion that warrants intervention by requiring such awards to be so large as to 'shock to judicial conscience,' 'so gross or inordinately large as to be contrary to right reason,' so exaggerated as to indicate 'bias, passion, prejudice, corruption, or other improper motive,' or as 'clearly exceeding that amount that any reasonable man could feel the claimant is entitled to.'
 
 
 24
 Caldarera v. Eastern Airlines, Inc., 705 F.2d 778, 784 (5th Cir.1983).
 
 
 25
 Viewing the record in light of this standard we may easily conclude that the $391,000 award for future wage loss is not excessive. Based on Williams' work life expectancy, his pre-accident salary, future increases in wages due to factors other than inflation, a below-market discount factor, and Williams' ability to return to work at four dollars per hour, Dr. Wolfson, an associate professor of finance and economics, calculated the present value of the future income stream to equal $391,000. Although Chevron introduced some evidence suggesting that Williams would be able to earn more than four dollars an hour and that the downturn in the oil and gas industry might have resulted in Williams' termination, the jury found it less credible than the plaintiff's damage model. We decline to impinge on the jury's province of assessing conflicting evidence where the record is sufficient to support alternative conclusions.
 
 
 26
 The jury awarded $400,000 for pain and suffering. Whether this amount represents an excessive recovery cannot be determined solely by comparison to awards upheld or reversed in other cases. Winbourne v. Eastern Airlines, Inc., 758 F.2d 1016, 1018 (5th Cir.1984), cert. denied, 474 U.S. 1036, 106 S.Ct. 603, 88 L.Ed.2d 582 (1985). However, we examine past awards for rough guidance in assessing the award at hand. See In re Air Crash Disaster Near New Orleans, La. on July 9, 1982, 767 F.2d 1151, 1156 (5th Cir.1985). A comparison of awards given in other cases and the facts of the present case lead us to conclude that this component of the verdict was excessive. "Having determined that an award is excessive, this court may either order a new trial on damages or may give the plaintiff the option of avoiding a new trial by agreement to a remittitur of the excessive portion of the award." Hernandez v. M/V Rajaan, 841 F.2d 582, 587 (5th Cir.), cert. denied, --- U.S. ----, 109 S.Ct. 530, 102 L.Ed.2d 562 (1988).
 
 
 27
 In Holmes v. J. Ray McDermott & Co., Inc., 734 F.2d 1110 (5th Cir.1984), the plaintiff was diagnosed as having a herniated lumbar disc. The jury awarded $412,098.22 in general damages which included $58,231 in past wages lost, $174,904 in future wage loss, and $5000 in unpaid medical bills. Thus, less than $180,000 of the award was attributable to pain and suffering. We concluded that the award "is very generous but not shocking to our conscience." Id. at 1119. In Holmes, the plaintiff suffered from continued pain and discomfort, was ten to fifteen percent permanently disabled, and, according to a psychologist, suffered ongoing depression.
 
 
 28
 In Thibodaux v. Acme Truck Lines, Inc., 443 So.2d 716 (La.App. 5th Cir.1983), writ denied, 445 So.2d 439 (La.1984), a plaintiff suffered from two ruptured discs and received $350,000 in general damages. The plaintiff and family members testified that he was in constant pain, had to take three or four hot showers a day to relieve the pain, could not work, wash his car, mow the lawn, help around the house, fish or hunt. Evidence also established that he was unable to return to work as a farmer. The award was upheld.
 
 
 29
 In Champagne v. Lee, 470 So.2d 378 (La.App. 5th Cir.1985), a woman suffered from a recurring herniated disc requiring two surgeries. Her doctor determined that she suffered a five to twenty-five percent disability after the surgeries. Her conjugal relationship with her husband had been so adversely affected that they no longer slept in the same bed. She was awarded $1,000,000 in general damages. The court conducted a survey of awards in cases involving similar injuries and found they ranged from $167,000 to $350,000. The court reduced the pain and suffering component from $1,000,000 to $350,000. See also, Andrews v. Mosley Well Service, 514 So.2d 491 (La.App. 3d Cir.), writ denied, 515 So.2d 807 (La.1987) (plaintiff suffered a ruptured disc and, after undergoing abnormally extensive surgery, was left with a 20% total disability and greatly restricted activity which precluded his return to any manual labor); Valentine v. Wells, 540 So.2d 344 (La.App. 1st Cir.1988) ($348,000 recovery for pain and suffering upheld where plaintiff suffered sexual dysfunction and evidence established that he could not return to manual labor and possibly not to any type of work at all).
 
 
 30
 We do not doubt that Mr. Williams suffers discomfort nor do we mean to denigrate his partially disabled state; however, after comparing the specific facts in this case in a light most favorable to Williams to the cases cited above, we find that the award of $400,000 for pain and suffering is entirely disproportionate. We find Williams' description of his suffering similar to, if not less than, that endured by the plaintiff in Holmes. In Holmes the plaintiff suffered a ten to fifteen percent permanent disability, a condition not reflected by the record in the instant case. Moreover, in Holmes a psychologist testified that the plaintiff suffered continued depression. Here Williams' orthopedist testified that he prescribed anti-depressants because anyone suffering chronic pain would be "a little blue." The doctor also testified that he had told his nurse that he would like to put the same antidepressants in the water cooler in his office.
 
 
 31
 In light of the similarity of Mr. Williams' conditions to those in Holmes and the marked difference between his suffering and the plaintiffs' in Thibodaux and Champagne, we hold that the maximum appropriate award for pain and suffering--physical and mental--under the present circumstances is $200,000. We therefore hold that Mr. Williams may either (1) opt for a new trial limited to the issue of recovery for his pain and suffering, or (2) accept a remittitur of $200,000.
 
 IV. Third-Party Complaint
 
 32
 Chevron impleaded Land and Marine and its insurers seeking to recover its costs of defense and indemnification for any judgment which might be rendered in Williams' favor. The court directed a verdict for the third-party defendants. Chevron correctly points out that, if it were free of negligence and fault (strict liability), Louisiana's Oilfield Indemnity Act of 1981, La.R.S. 9:2780, would not void Land and Marine's contractual duty to indemnify. See generally, Meloy v. Conoco, 504 So.2d 833 (La.1987) (clarifying scope and application of Oilfield Indemnity Act). We, however, have affirmed Chevron's liability based at least on art. 2317's strict liability provision. Under Meloy, Chevron's fault voids any obligation Land and Marine may have had to indemnify for costs of defense.
 
 V. Conclusion
 
 33
 Having concluded that the jury award was excessive, we order, subject to Williams opting for a new trial on the limited issue discussed above, the judgment reduced by $200,000. In all other respects, the judgment is
 
 
 34
 AFFIRMED.