**Milton Roy SMITH, Plaintiff–Appellant,**

v.

**TIDEWATER MARINE TOWING, INC., et al., Defendants,**

**Tidewater Marine Towing, Inc., and Twenty Grand Marine Service, Inc., Defendants–Appellees.**

No. 90–4515
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

April 1, 1991.

**839**

R. Scott Ramsey, Jr., Morgan City, La., for plaintiff-appellant.

Cliffe E. Laborde, III and Dean A. Cole, Laborde & Neuner, Lafayette, La., for Tidewater and Twenty Grand.

Before JOHNSON, SMITH, and WIENER, Circuit Judges.

PER CURIAM:

Plaintiff–Appellant Milton Roy Smith appeals from the decision of the jury in his Jones Act, 46 U.S.C.App. § 688, negligence and unseaworthiness suit against Defendant–Appellees Tidewater Marine Towing, Inc. and Twenty Grand Marine Service, Inc. (collectively, Tidewater). After the jury had returned a verdict by interrogatories, the court entered judgment for Tidewater. Smith filed a motion for a new trial and, in the alternative, for a judgment notwithstanding the verdict (j.n.o.v.), which the district court denied. We affirm.

I

OPERABLE FACTS

Tidewater hired Smith in December 1986 to work as a deckhand. Smith was injured in two accidents while working for Tidewater. The first accident occurred on May 24, 1987, while Smith was operating a winch on a tugboat, the M/V CHAROLAIS II. Smith claims that because Tidewater never instructed him how to operate that particular winch, he strained and injured his back when the winch suddenly tightened while he was working on it. Smith missed work for approximately two weeks. Upon returning to work, Smith was assigned to another tugboat, the M/V RED FLANDERS. Smith's second injury occurred in an incident involving this vessel.

On June 18, 1987, the RED FLANDERS was repositioning an empty barge. Smith and the mate on the RED FLANDERS had boarded the empty barge in order to secure it to a loaded barge. To do so, one of the men had to board the loaded barge which lay in the water about eight feet below the empty barge. Smith jumped down to the loaded barge, injuring his back on landing. He claims that the mate told him that he would have to jump. The mate testified that he told Smith not to jump. Smith eventually underwent two lumbar laminectomies and discectomies for his injury.

Alleging that he was injured because of Tidewater's negligence and because of the unseaworthiness of the vessels, Smith filed suit in May 1988. After the jury returned

a verdict on interrogatories, the court entered judgment for Tidewater. The court noted that the jury did make out an award and did fill out some interrogatories assessing the amount of Smith's damages. The court declared, however, that answering these interrogatories was unnecessary because the jury had found that Tidewater was not negligent and that the vessels were not unseaworthy. On June 15, 1990, the district court denied Smith's j.n.o.v. and new trial motions. Smith filed notice of appeal on July 2, 1990.

On appeal Smith contends that Tidewater introduced evidence of his felony conviction not to impeach his testimony but to prejudice the jury against him; that the trial court erred in not granting him a new trial or a j.n.o.v. when the jury returned inconsistent answers to interrogatories; that the evidence is insufficient to support the jury's verdict absolving Tidewater of liability; and that in answering the interrogatories the jury awarded inadequate damages.

## II

### IMPEACHMENT

■ Both sides to this dispute agree that Federal Rule of Evidence 609(a)(1) requires a judge to permit impeachment of a civil witness with evidence of prior felony convictions regardless of the unfair prejudice to the witness or the party offering the testimony. See *Green v. Bock Laundry Machine Co.*, 490 U.S. 504, 109 S.Ct.1981, 104 L.Ed.2d 557 (1989). Smith, however, argues that because attempted simple robbery is punishable by only six months' imprisonment, Rule 609(a)(1) does not embrace his conviction. Smith incorrectly states the terms of punishment. The Louisiana Criminal Code indicates that attempted simple robbery is punishable by imprisonment for up to 3½ years. See La.Rev. Stat.Ann. § 14:27 D(3) and 14:65 B.[1] Smith received a three-year prison sentence which the court suspended, placing him instead on supervised probation for four years. Rule

609(a)(1) clearly applies to Smith's conviction.

■ Smith also contends that because he received a pardon for his conviction, evidence of that conviction is not admissible under Rule 609(c). Rule 609(c) requires, however, that the conviction "ha[ve] been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on a finding of the rehabilitation of the person convicted...." Smith received, as he acknowledges, a first-offender pardon. Article 4, Section 5(E)(1) of the Louisiana Constitution of 1974 provides that "a first offender never previously convicted of a felony shall be pardoned automatically upon completion of his sentence, without a recommendation of the Board of Pardons and without action by the governor." The dispute, therefore, concerns whether a first-offender pardon, which the state constitution automatically grants, implies the finding of rehabilitation that Rule 609(c) requires in order to render the conviction inadmissible.

On its face the first-offender provision in the Louisiana Constitution does not require any showing of rehabilitation. See La. Const. art. 4, § 5(E)(1). It merely requires that the first offender have completed his sentence. *Id.* Smith, nevertheless, argues that a pardon based upon good behavior is a pardon based upon rehabilitation. See *United States v. Pagan*, 721 F.2d 24, 30 (2d Cir.1983). But *Pagan* is distinguishable. The second circuit held a finding of rehabilitation or its "equivalent procedure" present when the court twice exercised its discretion, first in placing Pagan on probation and second in granting him an unconditional discharge before his probation expired. *Id.* at 30. In contrast, no court so exercised discretion for Smith; he had completed his probation before he received his automatic pardon. No finding of rehabilitation or its equivalent procedure is, therefore, implicit in Smith's receiving his automatic pardon. See *United States v. Wig-*

---

1. The extract of the minutes of the 16th Judicial District Court, Parish of St. Mary, State of Louisiana, submitted as court exhibit 2, states that the court sentenced Smith "[u]nder R.S. 14:27 and R.S. 14:64, Attempted Simple Robbery." The sentencing court obviously mistakenly entered R.S. 14:64 for 14:65.

*gins,* 566 F.2d 944 (5th Cir.) (defendant's release from halfway house where placed during probation not shown to be based on finding of rehabilitation within literal requirement of Rule 609(c)), *cert. denied,* 436 U.S. 950, 98 S.Ct. 2859, 56 L.Ed.2d 793 (1978); *Gaudin v. Shell Oil Co.,* 132 F.R.D. 178 (E.D.La.1990) (state court's setting aside plaintiff's first conviction pursuant to La.Code Crim.Proc.Ann. art. 893 is not equivalent to finding of rehabilitation); *see also Wilson v. Attaway,* 757 F.2d 1227, 1244 (11th Cir.1985) (Georgia First Offender statute does not involve finding of rehabilitation); *United States v. Jones,* 647 F.2d 696, 700 (6th Cir.) (pardon restoring civil rights did not prove rehabilitation), *cert. denied,* 454 U.S. 898, 102 S.Ct. 399, 70 L.Ed.2d 214 (1981).

Smith's automatic pardon simply restored his civil rights.[2] The Advisory Committee's Note to Rule 609(c) states that "[a] pardon or its equivalent granted solely for the purpose of restoring civil rights lost by virtue of a conviction has no relevance to an inquiry into character." Fed.R.Evid. 609 advisory committee's note. Consequently, Rule 609(c) does not prohibit the admission of Smith's conviction.

■ Citing *Shows v. M/V Red Eagle,* 695 F.2d 114, 119 (5th Cir.1983), Smith also contends that Tidewater introduced evidence of Smith's felony conviction not to impeach his testimony, as Rule 609(a)(1) requires, but to prejudice the jury against him. Unlike the trial court in *Shows,* Smith's trial court did not permit the extent of the cross-examination to abuse Rule 609. It restricted the inquiry to the fact and date of Smith's conviction and the identity of the offense.

In addition, the record, belying Smith's prejudice claim, indicates why Smith's credibility was in question. It reveals inconsist-encies and contradictions between Smith's deposition and trial testimony. For example, despite his conviction, Smith denied at his deposition and on a Tidewater employment application that he had ever been in trouble with the law. He later claimed that because he had been pardoned, he believed that he did not have to include his conviction on the application. Smith had not, however, received his pardon at the time of the application. The record also indicates that Smith inconsistently answered questions on automobile accidents and on his educational level. For these reasons we find no merit to Smith's claim that the purpose of admitting the conviction into evidence was to prejudice the jury against him. His conviction was properly admitted.[3]

## III

### SPECIAL INTERROGATORIES

■ Smith insists that the jury in reaching its special verdict inconsistently answered interrogatories. The trial court consequently erred, he claims, in denying his motion for a new trial or for a j.n.o.v. The district court posed eighteen interrogatories to the jury. The first seven questions concerned liability for the May 24, 1987 incident on the M/V CHAROLAIS II; the next seven concerned liability for the June 18, 1987 incident on the M/V RED FLANDERS. With respect to each incident, these fourteen interrogatories focused on whether Tidewater was negligent, whether its negligence caused Smith's injuries, whether its vessels were unseaworthy, and whether Smith was contributorily negligent. Questions 15 and 16 asked what percentage of Smith's injuries, if any, the

---

**2.** The Division of Probation and Parole of the Louisiana Department of Public Safety and Corrections issued a "Verification of First Offender Pardon" concerning Smith. The "Verification" notes that Smith completed his sentence and meets all the requirements for an "automatic first offender pardon." It then declares that "all [Smith's] rights of citizenship and franchise are restored in Louisiana."

**3.** Rule 102 of the Federal Rules of Evidence provides that the Rules "shall be construed to secure fairness in administration ... to the end that the truth may be ascertained and proceedings justly determined." Smith contends that Rule 609(a) must be read in conjunction with and governed by the thrust of Rule 102. We see no conflict between the rules resulting from admitting Smith's conviction.

two incidents caused. Questions 17 and 18 concerned damages.

The jury responded "no" to the four questions that asked whether Tidewater was negligent with respect to both incidents and whether both vessels were unseaworthy in both incidents. Consequently, as the notes accompanying the interrogatories instructed, the jury did not answer the remaining ten of the first fourteen questions. Having answered its fourth "no," the jury was instructed that its "deliberations are concluded and you should not answer any more questions on this form."

Despite that instruction, the jury answered questions 15 through 18. To questions 15 and 16 the jury responded that 10% of Smith's injury resulted from the CHAROLAIS incident and 90% from the RED FLANDERS incident. To question 17 it stated that "the entire amount of damages" which Smith had sustained because of both accidents up to the date of trial amounted to $5,000 for bodily injury, pain and suffering, etc., and $15,300 for loss of earnings. To question 18, in response to a similar question concerning the future after the trial, the jury responded $0 for bodily injury, pain and suffering, etc., and $65,000 for loss of earnings.

Smith argues that the jury's finding Tidewater not negligent in the CHAROLAIS and RED FLANDERS incidents, its then finding that the former incident caused 10% and the latter 90% of his injury, and its stating an amount for damages clearly indicate that the jury was confused and that it may have intended to render a verdict in his favor. The verdict was, Smith argues, clearly inconsistent in itself.

■ Because the seventh amendment guarantees the right to jury trial, courts must when possible reconcile apparently conflicting answers to special interrogatories in order to validate the jury verdict. *Guidry v. Kem Mfg. Co.*, 598 F.2d 402, 406 (5th Cir.1979), *cert. denied*, 445 U.S. 929, 100 S.Ct. 1318, 63 L.Ed.2d 763 (1980). Only if no way to reconcile answers exists are they inconsistent. *Gallimore v. Missouri P.R. Co.*, 635 F.2d 1165, 1172 (5th Cir. Unit A Feb.1981) (citations omitted). "The test is whether the jury's answers can 'be said to represent a logical and probable decision on the relevant issues as submitted.'" *Id.* (citations omitted).

The jury's fourth and final "no" to questions concerning liability appears in question ten. The note following question ten informs the jury which has answered "no" to that question to "[s]kip Question Eleven and read note following Question Eleven." Relative to the notes following previous questions, the note following question eleven is lengthy and detailed. The note advises the jury:

> If you answered "Yes" to either Question Nine or Ten, go to Question Twelve. If you answered "Yes" to Questions Two and Four, and "No" to Questions Nine and Ten, go to Question Fifteen. If you skipped or answered "No" to all of Questions Two, Four, Nine, and Eleven, your deliberations are concluded and you should not answer any more questions on this form.

The jury had skipped questions two, four, nine, and eleven. Questions two and nine asked whether Tidewater's negligence played any part in producing Smith's injuries on the CHAROLAIS and RED FLANDERS respectively. Questions four and eleven asked whether the unseaworthiness of the CHAROLAIS and the RED FLANDERS respectively were proximate causes of injury to Smith. Having skipped these questions, the jury should have concluded. Instead it next answered question fifteen.

Once the jury had misread or misunderstood the final sentence of the note to question eleven informing it that it had concluded, any other instruction that it followed in note eleven led it ineluctably to question fifteen. The first sentence in note eleven referred the jury to question twelve. Affirmative responses to questions twelve and thirteen required an answer to question fourteen which gave no option but to go to question fifteen. A negative answer to question twelve required skipping questions thirteen and fourteen and going to question fifteen. A negative answer to question thirteen required proceeding to

question fifteen. The jury skipped questions twelve, thirteen, and fourteen, and answered question fifteen. It may, for instance, have thought that because it answered "no" to question ten, the only question which it had so answered that note eleven specifically addressed, it had to answer question fifteen.

Questions fifteen and sixteen do not ask the jury to consider liability; they ask it to assign to each incident a percentage of Smith's injury that each caused. The jury's assigning the cause of injury to each incident in this manner is not inconsistent with its finding Tidewater not negligent. The jury could obviously have concluded that although Smith was injured in both incidents, the fault was not Tidewater's. Likewise, the jury's answers to questions seventeen and eighteen indicate the damages Smith sustained because of the two incidents. The answers need not suggest that the jury intended that Tidewater should compensate Smith. *Cf. Gallimore,* 635 F.2d 1165 (no inconsistency when jury found defendant not negligent, plaintiff negligent, his negligence caused or contributed to injuries, but plaintiff's negligence responsible for only 80% of injuries).

The jury's findings that Tidewater was not at fault for Smith's injuries while it apportioned responsibility for his injury to the two incidents and measured damages resulting from the incidents are reconcilable and not inconsistent. The potential inconsistency obviously arose from the jury's misreading of the notes to the interrogatories. *See Willard v. The John Hayward,* 577 F.2d 1009, 1011 (5th Cir.1978) ("Even a jury verdict inconsistent on its face is not inconsistent if it can be explained by assuming the jury reasonably misunderstood the instructions."). Consequently, as to the inconsistencies among the interrogatories, the trial court did not err in denying Smith's motions for j.n.o.v. or new trial.

IV

## SUFFICIENCY OF THE EVIDENCE

■ Smith argues that the evidence does not suffice to support a jury verdict in favor of Tidewater, and that, consequently, the trial court should have granted his motions for j.n.o.v. or new trial. In considering a j.n.o.v. motion, " 'the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion.' " *Boyle v. Pool Offshore Co.,* 893 F.2d 713, 715–16 (5th Cir.1990) (quoting *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc)). When there is substantial evidence opposed to the motion, it should be denied. *Id.* at 716. "[W]e will reverse the denial of such a motion only if the record lacks evidence of such quality and weight that reasonable and fair-minded men would be unable to reach different conclusions." *Williams v. Chevron U.S.A., Inc.,* 875 F.2d 501, 505 (5th Cir.1989) (citing *Boeing Co.,* 411 F.2d at 374); *Springborn v. American Commercial Barge Lines, Inc.,* 767 F.2d 89, 99 (5th Cir.1985) (*Boeing* reasonable man standard applies to a seaman's motion for j.n.o.v.)

Granting or denying a motion for a new trial is within " 'the sound discretion of the trial court, and reversible only for abuse of that discretion.' " *Boyle,* 893 F.2d at 717 (quoting *Shows v. Jamison Bedding, Inc.,* 671 F.2d 927, 930 (5th Cir.1982)). " 'A trial court should not grant a new trial on evidentiary grounds unless the verdict is against the great weight of the evidence.' " *Williams,* 875 F.2d at 505 (quoting *Shows,* 671 F.2d at 930). When, as in the instant case, the trial court has denied a motion for a new trial, our review is particularly limited. *See Boyle,* 893 F.2d at 717 (citing *Shows,* 671 F.2d at 930). We "must view the evidence in a light favorable to the jury verdict," *id.* (citing *Williams,* 875 F.2d at 505), but "we need not view it in the light most favorable to the non-moving party." *Smith v. Transworld Drilling Co.,* 773 F.2d 610, 613 (5th Cir.1985). "Ultimately, a district judge will be deemed to have abused his or her discretion if there is an 'absolute absence of evidence to support the jury's verdict.' " *Id.* (citations omitted).

The evidence, claims Smith, overwhelmingly shows that Tidewater was negligent and its vessels unseaworthy and that he suffered substantial disability and loss of income. More specifically, Smith claims that the evidence shows that Tidewater placed him on board its vessels without instructing him how properly to perform his duties and without training him how to use its equipment. Smith testified that he had told the captain of the CHAROLAIS that he had hurt his back working on the winch. He also testified that the mate on the RED FLANDERS had told him that either the mate or Smith was going to have to jump down to the lower barge.

Tidewater retorts that substantial evidence exists to support the jury's finding that it was not negligent. The testimony of several witnesses, argues Tidewater, supports the jury's finding of no negligence on Tidewater's part. The captain of the CHAROLAIS testified that Smith never reported, either before or immediately after the accident, any problem with the winch that he claims caused his injury. The captain also testified that there was no problem with the winch. The mate on the RED FLANDERS testified that he told Smith not to jump. The jury, concludes Tidewater, chose to believe the testimony of the captain and the mate and not of Smith.

This case turns largely on the credibility of the witnesses. Credibility being the bailiwick of the jury, not of the court, *see Boeing*, 411 F.2d at 375, we leave such determinations to the jury. Examining instead the quantum of evidence furnished, *see Boyle*, 893 F.2d at 717, we conclude that evidence supporting the jury's verdict on the negligence and unseaworthiness issues is not completely absent. Consequently, we hold that the trial court did not abuse its discretion in denying Smith's motion for a new trial. We also conclude that the record contains ample conflicting evidence upon which reasonable people might have rendered a verdict for either Smith or Tidewater. We, therefore, hold that the trial court did not err in denying Smith's motion for j.n.o.v.

Finally, Smith argues that the amount of damages that the jury awarded was inadequate. Given our conclusion above, no need to address this argument exists.

## V

## CONCLUSION

The trial court did not err in admitting evidence of Smith's felony conviction. The automatic pardon restoring his civil rights which Smith received does not imply the rehabilitation necessary to render his conviction inadmissible under Rule 609(c). The record also indicates that Tidewater introduced the conviction not to prejudice but to impeach. Neither did the trial court err in denying Smith's motions for j.n.o.v. and for new trial, the jury's answers to interrogatories being reconcilable and not inconsistent, and the evidence being sufficient to support the jury verdict. Consequently, the judgment of the district court is AFFIRMED.