UNITED STATES of America,
Plaintiff–Appellee,

v.

Charles Lloyd PATTERSON,
Defendant–Appellant.

No. 92–1336.

United States Court of Appeals,
Tenth Circuit.

March 8, 1994.

Gregory C. Graf (James R. Allison, Interim U.S. Atty., with him on the brief), Asst. U.S. Atty., Denver, CO, for plaintiff-appellee.

Suzanne Rapoza (Michael G. Katz, Federal Public Defender, with her on the brief), Boulder, CO, for defendant-appellant.

Before BALDOCK, ALDISERT,* and BRORBY, Circuit Judges.

BRORBY, Circuit Judge.

Charles Lloyd Patterson was convicted of five felony counts relating to aircraft piracy. Mr. Patterson appeals his jury conviction raising several claims of reversible error: (1) admission of evidence of another hijacking in violation of Fed.R.Evid. 404(b) and 608(b); (2) in-court identification where circumstances showed the identification was unreliable; (3) testimony of statements by the Defendant concerning a plan to rob a bank and murder two people and evidence of prior misdemeanor convictions improperly admitted to show motive and intent; (4) admission of specific bad acts constituting the basis for prior convictions and criminal charges; (5) the prosecution's cross-examination of Mr. Patterson concerning his divorce, remarriage, his current wife's criminal activities, and their connection to an investigation of threats to a presidential candidate; (6) failure to sever from the remaining counts a felon in possession of a firearm count; and (7) the prosecutor's improper comments in closing argument. Finally Mr. Patterson contends the cumulative errors of the trial warrant reversal of his conviction.

## BACKGROUND

Testimony and evidence presented during the trial detailed the following course of events. In June of 1992, Mr. Patterson telephoned Dakota Ridge Aviation, a flight school in Boulder, Colorado. He identified himself as Fred Ward and scheduled a flight lesson for that afternoon. In the phone call, he also asked about the type of airplanes available and the performance of each aircraft.

That afternoon, Mr. Patterson arrived at Dakota Ridge and introduced himself as Fred Ward. Ms. Beadling, the instructor pilot, had some preliminary discussions with Mr. Patterson before beginning the flight lesson. She identified Mr. Patterson as a forty to forty-five-year-old man with a mustache and wearing a tan, western style jacket.

In the beginning of the flight lesson Ms. Beadling operated the aircraft, a Piper Warrior II. Once in flight, Ms. Beadling relinquished the controls to Mr. Patterson and noted that he behaved as if he had flown before.

Mr. Patterson told Ms. Beadling he needed to fly to Tri–County Airport, a small uncontrolled airfield in Erie, Colorado, to pick up a package. Ms. Beadling landed the airplane, taxied the aircraft to the fixed base operation located at Tri–County Airport, and went inside looking for a package addressed to Fred Ward. Unable to find the package, she reentered the aircraft, performed the normal checks, and taxied the aircraft to the end of the runway. At this point, Mr. Patterson pulled out a pistol and told Ms. Beadling to get out of the airplane. She described the gun as a very small, silver pistol with a white handle. She asked Mr. Patterson how he was going to fly the aircraft. He told her he had experience flying and did not need her in the airplane. Ms. Beadling gathered her equipment and left the aircraft. She watched the aircraft take off and fly directly east. Then she ran back to the fixed base operation and called the police.

During the trial, several witnesses to the hijacking were called to testify. They all identified Mr. Patterson as the hijacker. Mr. Patterson's fingerprints were found on the left yoke of the airplane, on the top right exterior of the aircraft above the door, and on some items inside the aircraft. When Mr. Patterson was arrested the police recovered several items from his hotel room: a small, silver .22 caliber pistol; a tan, western-style jacket; and Jepson aeronautical charts.

Mr. Patterson was indicted and convicted on five felony charges: (1) aircraft piracy, violating 49 U.S.C.App. § 1472(i); (2) interference with a flight crew member, violating 49 U.S.C.App. § 1472(j); (3) interstate transportation of a stolen aircraft, violating 18 U.S.C. § 2312; (4) possession of a firearm by

* The Honorable Ruggero J. Aldisert, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

a convicted felon, violating 18 U.S.C. §§ 922(g) and 924(a); and (5) use of a firearm in relation to a crime of violence, violating 18 U.S.C. § 924(c)(1).

## I. Evidence of Previous Hijacking

During rebuttal, the district court allowed testimony of an earlier hijacking in Arkansas. Mr. Patterson claims this evidence was not probative of identity, modus operandi, scheme, or plan. On appeal, we review a district court's decision to admit or exclude evidence under Rule 404(b) only for an abuse of discretion. *United States v. Morgan*, 936 F.2d 1561, 1571 (10th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1190, 117 L.Ed.2d 431 (1992). If the district court did not make "a clear error of judgment or exceed[ ] the bounds of permissible choice in the circumstances," we will not disturb the district court's decision. *United States v. Ortiz*, 804 F.2d 1161, 1164 n. 2 (10th Cir. 1986).

Evidence of the Arkansas hijacking revealed that two months before the hijacking in Colorado, Mr. Patterson was in Pine Bluff, Arkansas, on a five-day furlough from prison. He telephoned Berry Aviation of Pine Bluff to arrange for a charter flight from Pine Bluff to Little Rock, Arkansas. Arriving at Berry Aviation, he identified himself as Jim and met with pilot Phillip Taylor. Mr. Taylor testified Mr. Patterson was wearing a tan blazer, sunglasses, and cowboy boots.

Mr. Taylor sat in front of Mr. Patterson inside the aircraft. Approximately ten miles from Pine Bluff, Mr. Patterson told Mr. Taylor to take off his headset. Then Mr. Patterson pointed a pistol at Mr. Taylor's head and took control of the aircraft. Mr. Taylor described the pistol as a large caliber, semiautomatic weapon. Mr. Patterson told Mr. Taylor he needed to take the aircraft for about an hour. Mr. Patterson slid his seat forward and turned off the radio and the transponder.[1] Mr. Patterson then tied Mr.

Taylor's hands to his right leg and put a black cloth bag over Mr. Taylor's head.

The Defendant unfastened Mr. Taylor's seat belt and slid his chair back. Mr. Taylor testified he felt the Defendant was about to push him out of the plane. However, Mr. Patterson announced he was taking the aircraft to Carlisle Airport, a small uncontrolled airfield approximately twenty miles east of Little Rock, Arkansas. Mr. Patterson told Mr. Taylor he would not hurt him if he followed his instructions. As they approached the airport, Mr. Patterson asked Mr. Taylor about the performance capabilities of the aircraft, a Cessna 172. Mr. Patterson stated he was not very experienced in flying this type of aircraft and most of his experience was in flying Piper aircraft.

After landing the aircraft at Carlisle Airport, the Defendant took the bag off Mr. Taylor's head, taxied to the far end of the airport, and ordered Mr. Taylor to get out of the aircraft with his gear.

The district court instructed the jury this evidence could only be used in determining intent, motive, knowledge, absence of mistake or accident, or identity. The district court stressed this evidence could not be used to prove general bad character, but added that the evidence may be considered in determining Mr. Patterson's credibility. Defense counsel did not object to this limiting instruction.

## A. Rule 404(b)

Mr. Patterson challenges the admissibility of this evidence pursuant to Rule 404(b). The admissibility of other act evidence is governed by Fed.R.Evid. 404(b).[2] According to Rule 404(b), admissibility of other crimes or wrongs is dependent on the purpose for which the evidence is proffered. If the evidence is offered to prove the character of a person, it is not admissible. However, Rule 404(b) is an inclusive rule allowing evidence to be admitted when offered to

---

1. A transponder is an instrument that identifies the airplane to air traffic controllers.

2. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.

It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Fed.R.Evid. 404(b).

show identity, plan, or motive. *United States v. Record*, 873 F.2d 1363, 1375 (10th Cir.1989) (relying on *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988)). Defense counsel objected to the evidence during the trial; therefore, we review for a clear abuse of discretion. *Morgan*, 936 F.2d at 1571.

The Supreme Court in *Huddleston* outlined a four-step approach to analyze Rule 404(b) admissibility. 485 U.S. at 691–92. Evidence of prior bad acts is admissible if the party against whom the evidence is offered is protected from unfair prejudice. The

> protection from unfair prejudice comes from: (1) Rule 404(b)'s requirement that the evidence be offered for a proper purpose; (2) Rule 402's relevancy requirement; (3) Rule 403's requirement that the probative value of the evidence not be substantially outweighed by its potential for unfair prejudice; and (4) Rule 105's requirement that the trial court shall, upon request, instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted.

*United States v. Easter*, 981 F.2d 1549, 1554 (10th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2448, 124 L.Ed.2d 665 (1993).

Mr. Patterson argues the evidence of the prior hijacking is not probative of any proper purpose. He argues the government offered evidence of the Arkansas hijacking solely to rebut his testimony of traveling from Arkansas by Greyhound bus. Mr. Patterson raised the issue of his escape from an Arkansas prison to support his theory that he was being framed by the government for political reasons. Mr. Patterson testified he traveled by Greyhound bus, and the prosecution wanted to show he actually traveled by hijacking an aircraft.

The prosecution asserts evidence of the Arkansas hijacking was also offered to show identity, modus operandi, and common plan or scheme. Specifically, the prosecution suggests the crime of hijacking is unique, and the previous hijacking demonstrates Mr. Patterson still knew how to fly small airplanes, particularly the Piper aircraft. The district court allowed this evidence as probative of the identity issue.

■ The district court's reasons for allowing evidence of prior wrongs are proper. Identity is a proper purpose for Rule 404(b) evidence, and the primary defense in this case was the issue of identity.[3]

Although the two hijackings were not identical, they were very similar. The Tenth Circuit has held that "evidence of another crime need not be identical to the crime charged," as long as the crimes share enough elements. *United States v. Porter*, 881 F.2d 878, 887 (10th Cir.), *cert. denied*, 493 U.S. 944, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989). The hijacking in Arkansas and the hijacking in Colorado each involved a single engine, private aircraft. The planes' speed, avionics, handling, and instrumentation were very similar. In each hijacking, the aircraft was taken to an uncontrolled airfield and the hijacker used a gun. The hijacker in both cases was similarly dressed in a tan coat and cowboy boots. Hijacking is an unusual crime and these two hijackings were very similar; therefore, these crimes are probative of the identity issue. We are satisfied that the crimes shared a "signature quality." *See id.*; *United States v. Gutierrez*, 696 F.2d 753, 755 (10th Cir.1982), *cert. denied*, 461 U.S. 909, 103 S.Ct. 1884, 76 L.Ed.2d 813, 461 U.S. 910, 103 S.Ct. 1885, 76 L.Ed.2d 814 (1983). The Arkansas hijacking is especially relevant because not only was it similar in method, it

---

**3.** The district court's limiting instruction on the Arkansas hijacking quoted almost all of the proper purposes listed in Rule 404(b) and went beyond the actual purposes for which the evidence was offered. We have previously stated the "laundry list" approach is not ideal in limiting instructions. *United States v. Doran*, 882 F.2d 1511, 1525 (10th Cir.1989). Mr. Patterson did not object to the particular instruction, however, and in the absence of an objection we will not consider a challenge to the jury instruction "unless plain error amounting to a denial of a fundamental right of the accused is demonstrated." *United States v. Kilburn*, 596 F.2d 928, 935 (10th Cir.1978), *cert. denied*, 440 U.S. 966, 99 S.Ct. 1517, 59 L.Ed.2d 782 (1979); *see also* Fed. R.Crim.P. 30. The trial court's failure to give a more precise instruction does not constitute plain error.

was close in time. *See Record,* 873 F.2d at 1375 (uncharged misconduct relating to narcotics charges are especially relevant if it "is close in time and similar in method to the charged scheme").

■■■ Mr. Patterson argues he has suffered unfair prejudice which substantially outweighed any legitimate probative value of the Arkansas hijacking. However, the trial court has broad discretion in determining whether the prejudice of the offered testimony substantially outweighed the probative value. *See Record,* 873 F.2d at 1375. Evidence of prior bad acts will always be prejudicial, and it is the trial court's job to evaluate whether the guaranteed risk of prejudice outweighs the legitimate contribution of the evidence. We are required to give the trial court "substantial deference" in Rule 403 rulings. *Easter,* 981 F.2d at 1554.

Although the district court did not explicitly rule on the prejudicial impact of this evidence, it did so implicitly by permitting the evidence under Rule 404(b). Defense counsel had argued its concerns about the prejudicial impact of this evidence at the pretrial motions hearing. Therefore, we can assume the judge weighed the prejudicial impact against the probative value of the evidence before making the final determination to admit the testimony on the Arkansas hijacking.

Since our review of the district court's decision is limited to a clear abuse of discretion and we find no abuse of discretion, we must affirm the district court's conclusion of this matter.

## B. Rule 608(b)

■■■ Mr. Patterson's final argument against the admission of the evidence of the Arkansas hijacking is that it violates Rule 608(b). Rule 608(b) governs the admissibility of specific instances of conduct of a witness for purposes of impeachment.[4]

While cross-examining Mr. Patterson, the prosecutor asked if he had hijacked another

airplane. Mr. Patterson denied hijacking another airplane. In its rebuttal, the government called Phillip Taylor, the pilot of the Arkansas airplane, to testify to the earlier hijacking. Defense counsel now objects to this testimony and to the cross-examination. The defense argues the Arkansas hijacking was not probative of Mr. Patterson's character for truthfulness or untruthfulness and cross-examination on the specific instance of conduct was clearly improper pursuant to the plain terms of Rule 608(b). However, the district court instructed the jury that the jury may weigh the evidence of the Arkansas hijacking when considering Mr. Patterson's credibility.

■■■ Mr. Patterson is correct that the testimony of the Arkansas hijacking is impermissible according to Rule 608(b). However, we agree with other circuits that evidence properly admitted under Rule 404(b) is still admissible, even though otherwise impermissible under Rule 608(b). *See United States v. Smith Grading & Paving, Inc.,* 760 F.2d 527, 530–31 (4th Cir.), *cert. denied,* 474 U.S. 1005, 106 S.Ct. 524, 88 L.Ed.2d 457 (1985); *see also United States v. Abel,* 469 U.S. 45, 56, 105 S.Ct. 465, 471, 83 L.Ed.2d 450 (1984) (evidence impermissible under Rule 608(b) was still properly admissible to show bias); *United States v. Martinez,* 962 F.2d 1161, 1164–65 (5th Cir.1992) (same); Fed.R.Evid. 105.

■■■ Assuming the district court's instruction on credibility relating to the Arkansas hijacking testimony was not proper under Rule 608(b), it still is not reversible error. Defense counsel did not make a Rule 608(b) objection during the trial, nor did it raise any objection to the jury's limiting instruction. Therefore, we review only for plain error. *See United States v. Carter,* 973 F.2d 1509, 1515 (10th Cir.1992) ("In the absence of a proper objection at trial, we must first conduct a plain error analysis."), *cert. denied,* —— U.S. ——, 113 S.Ct. 1289, 122 L.Ed.2d 681 (1993).

---

4. Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime . . ., may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness.
Fed.R.Evid. 608(b).

■ The plain error analysis requires the court of appeals to view the trial record as a whole to determine if the error seriously affected the fairness of the trial. *United States v. Sides,* 944 F.2d 1554, 1560 (10th Cir.), *cert. denied,* — U.S. ——, 112 S.Ct. 604, 116 L.Ed.2d 627 (1991). The evidence against Mr. Patterson is overwhelming, any error in including the credibility instruction to the jury did not result in a miscarriage of justice.

## II.  In-Court Identification

■ Mr. Patterson's next claim on appeal is that the district court erred in allowing an unreliable in-court identification. Defense counsel objected to Mr. Taylor's identification of Mr. Patterson during the prosecution's rebuttal.

The district court judge held a bench hearing to evaluate the admissibility of Mr. Taylor's out-of-court and in-court identifications. The judge determined Mr. Taylor's out-of-court identification of Mr. Patterson based on one photograph was not admissible. The judge went on to determine, after carefully working through the five factors from *Neil v. Biggers,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 382–83, 34 L.Ed.2d 401 (1972), that the in-court identification was admissible. When the jury returned to the courtroom, the judge instructed the jury on his determinations and reminded the jury it was still free to reject the in-court identification if the jury felt it was unreliable.

The standard of review requires we "accept the trial court's findings of fact unless clearly erroneous and must consider the evidence in the light most favorable to the government." *United States v. Berryhill,* 880 F.2d 275, 280 (10th Cir.1989) (citing *United States v. Soto–Ornelas,* 863 F.2d 1487, 1490 (10th Cir.1988)), *cert. denied,* 493 U.S. 1049, 110 S.Ct. 853, 107 L.Ed.2d 846 (1990). Under this standard, the in-court identification of Mr. Patterson was proper. The district court determined Mr. Taylor's in-court identification was reliable based on his mannerisms and testimony on the witness stand. Mr. Taylor demonstrated a high level of certainty in his in-court confrontation and identification. The judge decided Mr. Taylor had a good opportunity to view Mr. Patterson before and after the hijacking. No evidence has been presented to show the district court's determination is clearly erroneous.

## III.  Testimony Admitted Pursuant to Fed.R.Evid. 402 and 403

Mr. Patterson next appeals the use of several witnesses by the prosecution as impermissible under Rules 402 and 403. "In general, the trial court has broad discretion in ruling on evidentiary matters. We may not reverse the trial court's evidentiary rulings in the absence of an abuse of discretion." *United States v. Rackley,* 986 F.2d 1357, 1362 (10th Cir.) (internal cites and quotations omitted), *cert. denied,* — U.S. ——, 114 S.Ct. 173, 126 L.Ed.2d 132 (1993). "[T]his court will not find an abuse of discretion unless we develop a definite and firm conviction that the trial court made a clear error of judgment." *United States v. Levine,* 970 F.2d 681, 688 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 289, 121 L.Ed.2d 214 (1992). If no objection was made to the testimony, then our standard of review is plain error. *United States v. Barbee,* 968 F.2d 1026, 1030–31 (10th Cir.1992).

### A.

■ Mr. Patterson first challenges evidence presented by the prosecution through the testimony of one of Mr. Patterson's prison-mates. This inmate testified that Mr. Patterson spoke of a plan to hijack a plane, rob a bank, kidnap his ex-wife's divorce attorney and his previous prosecuting attorney, torture the attorneys, and then throw them out of the plane. Defense counsel objected to this testimony at trial, claiming it was not relevant to the crime charged. The court allowed the testimony as evidence of motive and intent, reasoning that the testimony explained Mr. Patterson's motive to hijack the aircraft, the method by which his plan was to be implemented, and his intent to implement the plan. We find no abuse of discretion in the trial court's determination that these probative reasons were not substantially outweighed by any prejudice the testimony may cause.

### B.

■ Similarly we find no abuse of discretion in the court's allowance of testimony from an attorney who previously prosecuted Mr. Patterson for other offenses in Arkansas. The attorney's testimony was offered to establish Mr. Patterson was a convicted felon, an element of the felon in possession of a firearm count, and to prove motive for the hijacking. Even if we assume the jury was prejudiced by this testimony, that prejudice did not clearly overwhelm the probative value of the evidence.

### C.

■ Mr. Patterson also claims the trial court improperly admitted irrelevant testimony of another witness who spoke of Mr. Patterson's solicitation to commit murder and his questionable auto body repair business. No objection was made to this testimony at trial. This evidence was offered for a proper purpose: to establish Mr. Patterson's felony conviction. Even assuming the district court erred in admitting this testimony, Mr. Patterson cannot overcome the plain error standard.

### D.

■ Finally, Mr. Patterson asks us to examine the failure to exclude testimony regarding his divorce, remarriage, and current wife. This evidence was presented through cross-examination of Mr. Patterson without objection by defense counsel. Mr. Patterson claims, for the first time on appeal, this testimony resulted in undue prejudice. The prosecution offered this evidence to rebut Mr. Patterson's direct testimony that he was framed by the Arkansas prosecutors for past crimes because of events arising from his divorce proceedings. We find no plain error.

### IV. District Court's Refusal to Sever a Count

■ Mr. Patterson moved to sever count 4, felon in possession of a firearm, from the remaining counts pursuant to Rule 14. The district court denied his motion. On appeal,

he claims his motion for severance was improperly denied because the joinder allowed the prosecution to introduce evidence of his earlier felony conviction.[5] We review the trial court's decision for abuse of discretion. *United States v. Hollis,* 971 F.2d 1441, 1456 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1580, 123 L.Ed.2d 148 (1993); *See United States v. Valentine,* 706 F.2d 282, 289–90 (10th Cir.1983) (defendant's burden to show abuse in this context is a difficult one).

In reviewing a district court's refusal to sever a count, the Tenth Circuit has adopted the approach of examining the record for undue prejudice on a case-by-case basis. *See Valentine,* 706 F.2d at 290. We also look for the presence of limiting instructions. *Id.* at 290 n. 7. After carefully reviewing the entire record, we find no error. The prosecution's evidence on the prior conviction was minimal. The trial record reveals defense counsel initiated disclosure of the details of the previous felony conviction by claiming Mr. Patterson had been framed by the government and had no criminal background. The district court provided a limiting instruction. Mr. Patterson has not made a persuasive showing the joinder of the claims caused undue prejudice.

### V. Closing Arguments

■ Although defense counsel made no objection to the prosecution's closing argument, Mr. Patterson now challenges the closing argument on appeal. Our standard of review is plain error. *Hollis,* 971 F.2d at 1454. "[W]e review the prosecutor's remarks in the context of the entire record." *Id.*

Mr. Patterson has two specific complaints. First, the prosecuting attorney committed reversible error in violating Mr. Patterson's constitutional rights. The comment at issue is

[Defense counsel] admitted that his client was guilty of Count 4 [Felon in possession of a firearm]. He had to. His client admitted it on the stand. But he didn't plead guilty to it, did he, ladies and gentlemen?

---

5. Mr. Patterson does not dispute the propriety of joinder of count 4, felon in possession of a fire-

arm, to the other charges under Fed.R.Crim.P. 8(a).

This comment was offered to contest defense counsel's assertion that the only proven charge was the count Defendant had confessed to on the witness stand and to counter defense counsel's proposed inferences that the Defendant would only have pled not guilty to the other counts if he were innocent.

Mr. Patterson claims this comment is plain error because it threatens his constitutional right to plead not guilty. He relies on *United States v. Norris*, 910 F.2d 1246 (5th Cir. 1990). However, *Norris* is a very different case. In *Norris*, the prosecution entered evidence during its case-in-chief on Mr. Norris's not-guilty plea in an earlier, unrelated case in which Mr. Norris was ultimately convicted. In closing, the prosecution drew a parallel between the prior not-guilty plea and the presumably equally erroneous current plea. The Fifth Circuit determined the evidence was improperly admitted to impeach the defendant and reversed the case because the prosecution had presented insufficient evidence to sustain a conviction. *Id.* at 1247. In the case at hand, the prosecution sought to undercut defense counsel's assertions that because Mr. Patterson admitted to possession of a firearm his guilt was limited to count 4. Mr. Patterson's constitutional right was not violated by this closing argument comment.

 Second, Mr. Patterson challenges a comment made in the prosecutor's rebuttal closing argument. The prosecutor in effect told the jury it can assume defense counsel was admitting it had a very bad case.[6]

Mr. Patterson claims this comment was egregious and inflammatory. We do not have the same reaction. It is true "[n]o counsel is to throw verbal rocks at opposing counsel." *United States v. Murrah*, 888 F.2d 24, 27 (5th Cir.1989). However, in this particular factual situation, these comments

were not rocks. It may have been inappropriate for counsel to refer to the case as a "crush," but before a reversal can be ordered, the remarks must be extreme enough to have substantially threatened the defendant's right to a fair trial.

"[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone." *United States v. Oles*, 994 F.2d 1519, 1524 (10th Cir.1993) (quoting *United States v. Young*, 470 U.S. 1, 11, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985)). Neither of the challenged comments rises to the level of plain error.

## VI

Although not given a perfect trial, we find no errors sufficient, even when considered together, to mandate reversal of the conviction. Therefore, Mr. Patterson's argument for reversal based on cumulative errors fails.

Accordingly, we **AFFIRM**.

---

6. The actual comment was

Ladies and gentlemen, there is a famous lawyer, most trial lawyers know him. His name is Herb Stern, and he gives lectures on how to try cases. In fact, he calls it trying cases to men.

One thing he says for the defense not to do is don't spend too much time on the burden of proof, he said, because when you spend a lot of time about that, what's the message you send

to the jury? We just lost that case. Now, we are quibbling over how bad we lost, and that's what you saw here. It wasn't just a lost case. This was a crush, lady and gentlemen. It was an absolute crush.

In saying this is it, sometimes it is offensive when you come into court and your case is so bad that you try to frame another man.... That's offensive. And to say that's not exactly what was trying to be done is offensive.