**UNITED STATES of America, Plaintiff,**

**v.**

**Mark M. JACKSON, and Robert Martinez, Jr., Defendants.**

**Nos. 94–40001–01–SAC, 94–40001–02–SAC.**

United States District Court,
D. Kansas.

July 14, 1994.

See also 863 F.Supp. 1449.

Thomas J. Bath, Jr., James L. Eisenbrandt, Bryan Cave, Overland Park, KS, for Mark M. Jackson.

Thomas M. Bradshaw, Daniel O. Herrington, Armstrong, Teasdale, Schlafly & Davis, Kansas City, MO, for Robert Martinez, Jr.

Tanya J. Treadway, Office of U.S. Atty., Kansas City, KS, Richard L. Hathaway, Office of U.S. Atty., Topeka, KS, for U.S.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on several pending matters. The court will decide first whether the psychiatric records, which were subpoenaed from Veterans Center–Corpus Christi, Texas, and Dr. Robert Jimmenez of San Antonio, Texas, and which are under seal, should be released to the defendants. The defendant Martinez moves in limine for an order excluding admission or reference to his previous state and federal charges under Rule 609 of the Federal Rules of Evidence. (Dk. 90). Both defendants move for an order precluding the government from referencing or introducing certain evidence under Rule 404(b) of the Federal Rules of Evidence. (Dk. 96).

### PSYCHIATRIC RECORDS OF LOUIS GARCIA

By its order of May 6, 1994, the court granted on certain conditions the defendants' joint motion for a Rule 17(c) subpoena for Garcia's psychiatric records:

First, the clerk shall issue subpoenas to Dr. Robert Jimmenez and Veterans Center–Corpus Christi that require production to only the court on or before May 19, 1994, of all records concerning the treat-

ment, care and evaluation of Louis Albert Garcia for a emotional or mental disorder, defect or illness from 1988 through the present. Second, the court shall seal the records and view them in camera. Third, the defendants shall submit on May 13, 1994, briefs and any affidavits on the possible relevance that a "Major depressive Disorder single Episode non-psychotic" and "Post-traumatic Stress Disorder Chronic" would have on Garcia's credibility and bias. The government will have until May 19, 1994, to file its response. Fourth, the court will not disclose the relevant records, if any, until it has conducted the in camera inspection and decided any objections or assertions of privilege.

(Dk. 71 at 17–18) (footnote omitted). The court received the subpoenaed records from the Veterans Center–Corpus Christi on June 27, 1994, and from Dr. Robert Jimmenez on July 7, 1994. The court carefully reviewed these records considering the arguments and authorities made by both parties and the affidavit of Dr. G.R. Wurster submitted by the defendants. The court also followed the relevant law set out in its order of May 6, 1994. (Dk. 71). It should be noted that Louis Garcia has not asserted on the record any privilege with regard to these psychiatric records.

■ Here is an overview of the general rules guiding the court's determination. A witness's mental history is relevant to credibility if it bears on the witness's ability to perceive the events at issue, to recall clearly the events, or to testify accurately and truthfully about them. *United States v. Lopez,* 611 F.2d 44, 45–46 (4th Cir.1979); *see United States v. Moore,* 923 F.2d 910, 912–13 (1st Cir.1991). The witness's mental condition also must be temporally relevant. *United States v. Honneus,* 508 F.2d 566, 573 (1st Cir.1974), *cert. denied,* 421 U.S. 948, 95 S.Ct. 1677, 44 L.Ed.2d 101 (1975). Finally, the witness's mental condition "must not 'introduce into the case a collateral issue which would confuse the jury and which would necessitate allowing the Government to introduce testimony explaining the matter.'" *Lopez,* 611 F.2d at 45–46 (quoting *United States v. Mucherino,* 311 F.2d 172, 174 (4th Cir. 1962)). Utilizing Fed.R.Evid. 403, the court

should balance " 'the potential prejudice of a free wheeling inquiry intended to stigmatize the witness against whatever materiality the evidence might have.'" *Lopez,* 611 F.2d at 46 (quoting *United States v. Honneus,* 508 F.2d at 573). The courts in applying these rules have found mental condition relevant only where "the witness exhibited a pronounced disposition to lie or hallucinate, or suffered from a severe illness, such as schizophrenia, that dramatically impaired her ability to perceive and tell the truth." *United States v. Butt,* 955 F.2d 77, 82–83 (1st Cir. 1992).

■ The court's impression from reading the psychiatric records is that during the relevant time period Louis Garcia did not suffer from a serious mental illness. The records establish that he was not psychotic and did not display hallucinations, delusions, or illusions. He was oriented to time, place and person, and his reality testing was intact. The court is satisfied that Garcia's major depression is a collateral issue that could confuse the jury and which would require additional evidence from the prosecution to explain. The depression, while obviously serious enough to disable Garcia from work, was not of the nature or duration to impair significantly his ability to perceive the events at issue, to recall them, or to tell the truth. The use of these records in cross-examination would do little to impair Garcia's credibility but would do much to embarrass him and to assault and invade his privacy and personality. The defendants are amply equipped with other material on which to impeach Garcia, including his conflicting statements and guilty plea. The court is convinced that Garcia's mental condition would have minimal effect, at best, on the jury's evaluation of his credibility and would be substantially outweighed by the unfair prejudice to Garcia, the potential for juror confusion over the real and potential impact from the diagnosed and undiagnosed psychological disorders, the danger of the jury being misled on the actual impact of this single episode of major depressive disorder, and the undue delay from a mini-trial on this collateral issue. The court retains these records

under seal and denies the defendants' request to view them for possible use at trial.

## MARTINEZ' MOTION IN LIMINE (DK. 90).

The defendant Martinez seeks to exclude admission and reference to two previous criminal matters under Rule 609 of the Federal Rules of Evidence.[1] The first criminal matter is a state drug conviction in Texas. On February 7, 1986, the defendant pleaded guilty in the District Court of Harris County, Texas, to one count of distribution of cocaine. The state court ordered probation, fined the defendant $500.00, and deferred the adjudication of guilt. On March 22, 1994, the state court entered an order finding the defendant had completed probation, allowing the defendant to withdraw his guilty plea, dismissing the indictment, and setting aside the judgment of conviction. The second criminal matter arises under federal law. The defendant Martinez pleaded guilty to filing a false statement in violation of 18 U.S.C. § 1001. The United States District Court for the Southern District of Texas suspended imposition of sentence and placed Martinez on probation for three years. Martinez successfully completed his probation which ended on June 18, 1993.

Rule 609 permits introduction of prior convictions for the purpose of attacking a witness's credibility. When the criminal defendant is testifying, evidence of a prior conviction for a crime punishable by death or imprisonment for over one year "shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused." Fed. R.Evid. 609(a)(1). If the prior conviction involves dishonesty or false statement, regardless of the punishment imposed, the court shall admit the conviction and need not balance the probative value of the conviction against its prejudicial effect. Fed.R.Evid. 609(a)(2). The prior conviction, however, is not admissible if it "has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on

a finding of rehabilitation of the person convicted." Fed.R.Evid. 609(c).

### A. *1986 Texas Cocaine Charge.*

■ The defendant Martinez contends there is no conviction because the charges were dismissed and no adjudication of guilt was ever made. The defendant Martinez argues that Texas law governs whether there is a conviction for Rule 609 purposes and that *Green v. State,* 663 S.W.2d 145 (Tex.App. 1983), is controlling of the issue. The court disagrees.

What is a conviction under Rule 609 is a complex question which implicates the underlying policy of Rule 609 that a conviction differs from other evidence of misconduct in its reliability. 28 Charles A. Wright & Victor J. Gold, *Federal Practice and Procedure* § 6133 at 208 (1993). The issue here is whether a guilty plea without an adjudication of guilt constitutes a conviction under Rule 609. Though the case law is conflicting, *see Federal Practice and Procedure* § 6133 at 210 n. 27, this court's difficulty in deciding the issue is eased by the binding precedent of a Tenth Circuit decision.

In *United States v. Turner,* 497 F.2d 406 (10th Cir.1974), *cert. denied,* 423 U.S. 848, 96 S.Ct. 90, 46 L.Ed.2d 71 (1975), the defendant argued on appeal that the trial court had erred in allowing the government to cross-examine him on a guilty plea that did not amount to a conviction. Turner had pleaded guilty in state court under the deferred judgment procedure. Oklahoma law provided that upon the defendant's guilty plea the court would withhold entering judgment and then would place the defendant on probation. If the defendant completed the probation, he was "discharged without a court judgment of guilt," the plea of guilty was expunged, and the charges were dismissed. 497 F.2d at 407. The Tenth Circuit affirmed holding first that Oklahoma law did not govern the admissibility of evidence in a federal criminal

---

1. Rule 608(b) of the Federal Rules of Evidence permits a litigant to cross-examine a witness about specific instances if probative of truthfulness or untruthfulness. The defendant's motion does not address Rule 608(b). Since admissibility under that provision depends on what Martinez says during direct examination, the court reserves any Rule 608(b) ruling for trial.

action.[2] *Id.* Federal case law recognizes "that a guilty plea is a confession of guilt and amounts to a conviction." *Id.* Turner's guilty plea under the Oklahoma deferred judgment procedure was a conviction admissible for impeachment purposes.

*Turner* is on all fours with this case.[3] This is not a case where the defendant has entered a guilty plea and simply awaits judgment and sentencing. Nor is this an instance where the guilty plea lacks a measure of finality because the defendant may later be allowed to withdraw it. *See United States v. Franklin,* 829 F.Supp. 1319 (M.D.Fla.1993) (and cases cited therein). Instead, like *Turner,* the defendant here pleaded guilty pursuant to a deferred judgment procedure, paid a fine, and served his imposed probationary period in lieu of a formal term of imprisonment. In effect, Martinez' guilty plea gained some finality once he began serving his probation and undoubtedly is final now that he has successfully completed the probation. Moreover, as part of Texas' deferred adjudication procedure, the district court must first find that the evidence of record substantiates the defendant's guilty plea. Tex.Code Crim. Proc.Ann. art. 42.12. In addition, the Texas legislature considers a deferred adjudication to be some relevant evidence of misconduct. Article 42.12 makes deferred adjudication with probation or community supervision admissible on the issue of penalty for a subsequent conviction. That Article 42.12 and Article 38.29 may prohibit admissibility in other proceedings, such as here, is not controlling on this court, for it is a matter of federal law, not Texas law, whether this evidence is admissible under Rule 609. The court considers a guilty plea under all of the circumstances noted above to be reliable evidence of misconduct equivalent to that of a conviction under Rule 609.

■ The defendant's later withdrawal of his guilty plea and dismissal of the case raises the applicability of Rule 609(c). The dispositive issue is whether Tex.Code Crim. Proc.Ann. art 42.12 is a procedure "equivalent" to "pardon, annulment, or certificate of rehabilitation" that is "based on a finding of the rehabilitation" of the defendant. Fed. R.Evid. 609(c). On its face, the Texas statute does not require any showing of rehabilitation before the defendant is allowed to withdraw his plea and to have his case dismissed. It merely requires the defendant to complete his conditions of probation. The state court dismissed and discharged Martinez before he completed his ten-year probation term. According to its order, the state court did this without any finding that the defendant was rehabilitated but only because he had satisfactorily completed in excess of one-third of his probationary period. A finding of rehabilitation or its equivalent is not implicit in Martinez receiving his automatic discharge and dismissal pursuant to Texas statute upon satisfactory completion of probation. This ruling is consistent with precedent. *See, e.g., United States v. Wood,* 943 F.2d 1048, 1055 (9th Cir.1991) (Montana's deferred adjudication statute vests state court with discretion to consider rehabilitation before dismissing conviction, but the convictions are admissible in the absence of any state court finding of rehabilitation); *Smith v. Tidewater Marine Towing, Inc.,* 927 F.2d 838, 840–41 (5th Cir.1991) (automatic pardon under Louisiana's first offender provisions was not equivalent to a finding of rehabilitation); *Wilson v. Attaway,* 757 F.2d 1227, 1244 (11th Cir.1985) (Georgia's First Offender statute involved no finding of rehabilitation).

■ The burden is with the government to prove that the probative value of the prior conviction for impeachment purpose outweighs its prejudicial effect to the defendant. *United States v. Bagley,* 772 F.2d 482, 487 (9th Cir.1985), *cert. denied,* 475 U.S. 1023,

---

**2.** The defendant cites *United States v. Moore,* 556 F.2d 479, 484 (10th Cir.1977) for the proposition that state law is controlling in the determination of what is a conviction under Rule 609. The defendant reads *Moore* too broadly. The issues there were whether an expungement occurred under California law and the effect of it for purposes of Rule 609(c).

**3.** Because the admissibility of evidence in a federal criminal trial is a matter of federal law, the holding in *Green v. State,* 663 S.W.2d 145 (Tex. App.1983), is not significant.

106 S.Ct. 1215, 89 L.Ed.2d 326 (1986); *United States v. Reece*, 797 F.Supp. 843, 848 (D.Colo.1992), *aff'd*, 28 F.3d 114, 1994 WL 209809 (10th Cir. May 26, 1994) (Table case). Factors relevant to this balancing include:

(1) the point in time of the conviction and the subsequent history of the defendant; (2) similarity between the past crime and the current charge; (3) importance of the defendant's testimony; (4) impeachment value of the prior conviction; and (5) importance of the defendant's credibility.

*Reece*, 797 F.Supp. at 848 (citing *Bagley*, 772 F.2d at 487). The balancing of these factors is best left for trial when the court will have the better opportunity to assess them. The court orders the government counsel not to refer to this conviction during voir dire or opening statement. Before asking the defendant Martinez about this conviction, the government counsel should approach the bench and advise counsel and court of its intent, and the court will determine admissibility at that time.

### B. *1990 Federal False Statement Case*

■ The defendant argues again that the suspended sentence received on this charge does not amount to a conviction under Rule 609. The defendant cites no authority for his position. "Use of convictions for which suspended sentences were received is permissible for impeachment purposes." *United States v. Hall*, 588 F.2d 613, 615 n. 4 (8th Cir.1978) (citing *United States v. Collins*, 552 F.2d 243, 247 (8th Cir.), *cert. denied*, 434 U.S. 870, 98 S.Ct. 214, 54 L.Ed.2d 149 (1977)) (cited in *United States v. Swanson*, 9 F.3d 1354, 1357 n. 4 (8th Cir.1993)). A guilty plea with suspended sentence is reliable evidence of misconduct equivalent to a conviction for purposes of Rule 609.

■ Alternatively, the defendant argues that the instant court should deem the defendant rehabilitated under Rule 609(c). He points to his completion of restitution, his compliance with the terms of probation, and his law-abiding and productive life as the father of six children for the last seven years. The defendant cites *United States v. Thorne*, 547 F.2d 56 (8th Cir.1976), as authority for this court now finding him rehabilitated for purposes of Rule 609(c). In *Thorne*, the Eighth Circuit held that in the absence of a formal certificate of rehabilitation the trial court in which the prior conviction was being offered could still find the defendant rehabilitated under Rule 609(c). 547 F.2d at 58–59.

This court is not persuaded by the expansive reading of Rule 609(c) in *Thorne*. A leading commentary calls the conclusion in *Thorne* "clearly erroneous:"

Such a finding by the court in which the witness's testimony is offered is in no way "equivalent" to a pardon, annulment, or certificate of rehabilitation. These are the product of processes where the rehabilitation or innocence of the convict is the principal, not just the incidental, subject of attention. If Congress intended to empower trial courts to "rehabilitate" under subdivision (c), then the debates over Rule 609 certainly would have revealed that intent. This is because such a reading of the rule would make rehabilitation of the witness an issue to be decided by the trial court in virtually every case. However, the debates reveal only marginal interest in subdivision (c).

*Federal Practice & Procedure* § 6137 at 268–69. The Second Circuit recently rejected the Eighth Circuit's interpretation of Rule 609(c) in *Thorne*. *Zinman v. Black & Decker (U.S.), Inc.*, 983 F.2d 431, 435 (2nd Cir.1993).

The defendant does not point to any certificate of rehabilitation or to an express or implied finding of rehabilitation made by the United States District Court for the Southern District of Texas. Martinez' successful completion of restitution and probation and his life as a father and citizen does not constitute a finding of rehabilitation for purposes of Rule 609(c). *See Zinman*, 983 F.2d at 435. Subdivision (c) does not preclude admissibility in this case. Since the conviction for false statement falls within Rule 609(a)(2), the evidence is admissible without regard to balancing its probative value against prejudicial effect. *See United States v. Sloman*, 909 F.2d 176, 181 (6th Cir.1990). The court denies the defendant's motion in limine as to the 1990 federal conviction for making a false statement in violation of 18 U.S.C. § 1001.

## JOINT MOTION IN LIMINE

The government intends to introduce the following evidence as proof that the defendants acted intentionally and with knowledge, pursuant to a planned pattern or scheme, in regards to the conduct for which they are charged with conspiracy to defraud the United States, bribery, aiding and abetting the supplementation of a federal employee's salary, and conspiracy to obstruct justice:

(1) Evidence that defendant Robert Martinez, Jr., while employed at Bowling Green Hospital in Texas, recruited Louis Garcia to refer patients to the hospital, paid Louis Garcia for those referrals, and/or caused Louis Garcia to be paid for those referrals, and received from Louis Garcia a percentage of this payment himself.

(2) Evidence that the defendants, Mark M. Jackson and Robert Martinez, Jr., while employed at Charter by the Sea Hospital in St. Simon's Island, Georgia, attempted to continue a relationship with Louis Garcia, whereby Louis Garcia would refer patients to Charter by the Sea Hospital and be paid for these referrals.

(3) Evidence that the defendants, Mark M. Jackson and Robert Martinez, Jr., were terminated from their employment at Charter by the Sea Hospital for attempting to pay for patient referrals and/or paying for patient referrals.

(Dk. 102 at 3).

▬ Though evidence of other misconduct or wrongs is not admissible to prove a predisposition to commit the crime charged, such evidence may be admissible for other limited purposes under Rule 404(b) of the Federal Rules of Evidence. Simply stated, admissibility under Rule 404(b) depends on the purpose for which the other crimes or wrongs are offered. If offered to prove a defendant's character, the evidence is inadmissible. If offered for another purpose, such as to show identity, motive or plan, then "Rule 404(b) is an inclusive rule allowing" evidence of other crimes or wrongs. *United States v. Patterson,* 20 F.3d 809, 812–13 (10th Cir.1994), *petition for cert. filed* (May 24,

1994) (No. 93–9347). Prior bad acts are admissible if the party against whom they are offered is protected from unfair prejudice. *Id.* at 813. The Supreme Court recently identified four rules which offer protection from unfair prejudice:

> [F]irst, from the requirement of Rule 404(b) that the evidence be offered for a proper purpose; second, from the relevancy requirement of Rule 402—as enforced through Rule 104(b); third, from the assessment the trial court must make under Rule 403 to determine whether the probative value of the similar acts evidence is substantially outweighed by its potential for unfair prejudice, ... and fourth, from Federal Rule of Evidence 105, which provides that the trial court shall, upon request, instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted.

*Huddleston v. United States,* 485 U.S. 681, 691–92, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771 (1988) (citations omitted).

▬ Prior bad act evidence forces the defendant to defend past conduct and carries the prospect of showing that the defendant is generally bad. *United States v. Robinson,* 978 F.2d 1554, 1558 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1855, 123 L.Ed.2d 478 (1993). In light of these serious consequences, the Tenth Circuit has urged trial courts to first consider if the proffered 404(b) evidence:

> (1) tends to establish intent, knowledge, motive, identity, or absence of mistake or accident;

> (2) is so related to the charged offense that it serves to establish intent, knowledge, motive, identity, or absence of mistake or accident;

> (3) has real probative value and not just possible worth;

> (4) is close in time to the crime charged; and

> (5) even if relevant, be excluded if the probative value is substantially outweighed by the danger of unfair prejudice.

*Robinson,* 978 F.2d at 1559. The burden rests with the government to show the proffered evidence is material or relevant. *United States v. Owen,* 15 F.3d 1528, 1535 (10th Cir.1994). "[T]he government should 'articulate precisely the evidentiary hypothesis by which a fact of consequence may be inferred from the evidence of other acts.'" *Robinson,* 978 F.2d at 1559 (quoting *United States v. Kendall,* 766 F.2d 1426, 1436 (10th Cir.1985), *cert. denied,* 474 U.S. 1081, 106 S.Ct. 848, 88 L.Ed.2d 889 (1986)). Admissibility under Rule 404(b) is committed to the trial court's sound discretion. *United States v. Harrison,* 942 F.2d 751, 759 (10th Cir.1991).

 Rule 404(b) applies only to evidence of acts extrinsic to the crime charged. *United States v. Pace,* 981 F.2d 1123, 1135 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1401, 122 L.Ed.2d 774 (1993). In contrast, it does not apply to evidence of other acts intrinsic to the crime charged, that is, "other acts which are so inextricably intertwined with the crime charged that testimony concerning the charged act would have been confusing and incomplete without mention of the prior act." *United States v. Treff,* 924 F.2d 975, 981 (10th Cir.), *cert. denied,* 500 U.S. 958, 111 S.Ct. 2272, 114 L.Ed.2d 723 (1991). The 1991 Advisory Committee Notes to Rule 404(b) cite the Fifth Circuit decision of *United States v. Williams,* 900 F.2d 823, 825 (1990), for its definition of "intrinsic" evidence: "when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged." Other acts are also intrinsic if " 'necessary to complete the story of the crime [on] trial.'" *United States v. Roberts,* 933 F.2d 517, 520 (7th Cir.1991) (quoting *United States v. Towne,* 870 F.2d 880, 886 (2nd Cir.), *cert. denied,* 490 U.S. 1101, 109 S.Ct. 2456, 104 L.Ed.2d 1010 (1989)).

 Evidence that the defendant Martinez while at Bowling Green Hospital in Houston, Texas, recruited Louis Garcia and paid or caused him to be paid for referrals is intrinsic evidence to the crimes charged. This evidence is an integral and natural part of Garcia's account of the crimes charged here, and without it, his testimony will seem confusing and incomplete. This evidence is a necessary preliminary in explaining how Garcia, an employee assistance counselor for the Postal Service in Texas, became associated with the defendants and the Parkview Hospital in Topeka. This evidence provides a critical context to the conspiracy charged. The government expects Garcia to testify that Martinez threatened to tell the Postal Service about Garcia's consulting agreement with Bowling Green if Garcia did not agree to refer patients to Parkview Hospital. In short, these other acts at Bowling Green Hospital are intrinsic to the crimes charged and Rule 404(b) is inapplicable. The defendants' motion in limine regarding this evidence is denied.

There is no dispute that Rule 404(b) applies to the evidence about the defendants' attempts to continue their relationship with Garcia while at Charter by the Sea Hospital. The same is true about the evidence regarding the defendants' termination from Charter by the Sea Hospital. The court declines to rule at this time in favor of determining admissibility at trial. The court directs the prosecution to refrain from mentioning this 404(b) evidence during opening statement and to instruct its witnesses not to mention this evidence until the prosecution comes to the bench and asks the court for its ruling on this evidence.

Though it declines to rule now, the court offers these general thoughts. The defendants' attempts at Charter by the Sea Hospital to continue their working relationship with Garcia appears probative of intent, plan, knowledge, and absence of mistake or knowledge. The Tenth Circuit has long "recognized the probative value of uncharged acts ... to demonstrate motive, intent, knowledge, or plan in the context of a conspiracy prosecution." *United States v. Record,* 873 F.2d 1363, 1375 (10th Cir.1989) (citations omitted). The defendants' attempts are close in time and similar in method to those acts charged in the superseding indictment. The Tenth Circuit has "allowed evidence of subsequent crimes where it is similar to the crime charged or possesses some 'signature

quality.'" *United States v. Abreu,* 962 F.2d 1425, 1436 (10th Cir.1992), *rev'd on other grounds,* —— U.S. ——, 113 S.Ct. 2405, 124 L.Ed.2d 630 (1993). Assuming a limiting instruction is given, unfair prejudice is unlikely unless this evidence takes on undue significance in the case as a whole. The court, however, is concerned that evidence of the defendants' termination and the circumstances surrounding it could be unfairly prejudicial to the defendants. This evidence would interject a subsequent employer's opinion about the wrongfulness of the same conduct for which the defendants are on trial. The jury could be confused into believing the employer's termination amounts to a determination of the defendants' guilt. There is also a danger that the jury will be misled about the limited purpose of the evidence regarding the corporate, personnel, and/or employment policies at Charter by the Sea Hospital. As stated above, the prosecution shall not mention or refer to this Rule 404(b) evidence in opening statement or in its case without first approaching the bench and asking the court to decide admissibility.

IT IS THEREFORE ORDERED that the psychiatric records subpoenaed from Veterans Center–Corpus Christi, Texas, and Dr. Robert Jimmenez of San Antonio, Texas, remain under seal and shall not be released to the defendants;

IT IS FURTHER ORDERED that the defendant Martinez' motion in limine (Dk. 90) is taken under advisement as to the 1986 state drug conviction, and is denied as to the 1990 federal conviction for making a false statement in violation of 18 U.S.C. § 1001;

IT IS FURTHER ORDERED that the defendants' joint motion in limine (Dk. 96) in regards to Rule 404(b) evidence is denied as to the evidence of other acts at Bowling Green Hospital and is taken under advisement as to the other Rule 404(b) evidence. The same ruling is made as to the government's related motion (Dk. 101) regarding the admissibility of Rule 404(b) evidence.